**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James ANDERSON,**
**Defendant–Appellant.**

**No. 88–2499.**

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1989.

Decided Feb. 28, 1990.

Frances C. Hulin, Asst. U.S. Atty., Office of the U.S. Atty., Danville, Ill., for plaintiff-appellee.

James Anderson, Peoria, Ill., defendant-appellant pro se and Brian M. Collins, Magee, Collins & Lodge, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and CUMMINGS, and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

The Government alleges that James "Big Jimmy" Anderson was a member of a conspiracy to distribute "street level" narcotics. Anderson admits to buying drugs from Jose "Kiki" Castro, the head of the conspiracy; however, he contends that all of his purchases were for personal use rather than for distribution. For reasons explained below, the case against Anderson and his codefendants was the subject of two trials. In both instances, the jury was persuaded by Government's evidence. After the first trial, the jury found Anderson and his three codefendants guilty of conspiracy to possess cocaine and heroin with an intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. During that trial, however, the court refused to give the defendants' instruction outlining their theory of defense—that proof of a mere buyer-seller relationship was insufficient to convict them of conspiracy to distribute narcotics. Defendants appealed, challenging this decision by the trial court and raising other claims of error. Included among these was the claim that the evidence was insufficient to sustain their conviction. This court held that it was plain error for the trial court not to give defendants' tendered instruction. *United States v. Douglas,* 818 F.2d 1317, 1322 (7th Cir.1987). Without addressing the insufficiency of evidence claim, we vacated the convictions and remanded for a new trial. After a second trial in which defendants' buyer-seller instruction was given, the jury again convicted Anderson and his codefendants of conspiracy to possess cocaine and heroin with an intent to distribute.

This is Anderson's appeal from his second conviction. He raises numerous claims on appeal, including the contention that his rights under the Double Jeopardy Clause of the fifth amendment were violated when he was retried. Anderson's codefendants have already been before this court and have raised each of these claims in their consolidated appeal. Our decision in that case, *United States v. Douglas,* 874 F.2d 1145 (7th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989)

("*Douglas II*"), fully governs the merits of the present appeal. We affirm.

## I. The Double Jeopardy Claim

Admittedly, the double jeopardy claim raised by defendants in *Douglas II* and now pressed by Anderson is a matter which gives us some pause. Anderson argues, as did his codefendants, that by vacating his first conviction and remanding for retrial without first addressing his insufficiency of the evidence claim, this court effectively caused him to suffer prosecution for the same offense after an acquittal. This argument turns upon a legal principle, a broad reading of *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and a presumption.

The legal principle upon which Anderson relies is that when an appellate court determines that the evidence at trial was insufficient to sustain the conviction, its decision is the equivalent of an acquittal. If such a determination is made, the Double Jeopardy Clause precludes the Government from retrying defendant on the same charges. *Id.* at 18, 98 S.Ct. at 2150. In *Burks,* the Supreme Court explained the moorings of this principle:

[A]n appellate reversal [on the grounds that the evidence was insufficient] means that the government's case was so lacking that it should not have been *submitted* to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant, when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

*Burks,* 437 U.S. at 16, 98 S.Ct. at 2150 (emphasis in original).

A minority of Supreme Court Justices read *Burks* broadly to hold that an appellate court must review a defendant's sufficiency of evidence claim before vacating and remanding a conviction for retrial on the basis of trial error. *See Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 320–21, 104 S.Ct. 1805, 1819–20,

**1078**

80 L.Ed.2d 311 (1984) (Brennan, J., concurring in part and concurring in the judgment, joined by Marshall, J.). Some circuits have also read *Burks* broadly to reach the same conclusion. *Vogel v. Commonwealth of Pennsylvania*, 790 F.2d 368, 376 (3rd Cir.1986); *United States v. Hodges*, 770 F.2d 1475, 1477 (9th Cir.1985); *United States v. Sneed*, 705 F.2d 745, 749 (5th Cir.1983); *United States v. Morris*, 612 F.2d 483, 492 (10th Cir.1979).

In *Douglas II*, this court was persuaded that the Supreme Court's subsequent decision in *Richardson v. United States*, 468 U.S. 317, 323, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984) revealed that *Burks* did not require, in all instances, that an appellate court rule on the insufficiency of evidence claim before a defendant could be retried.[1] This court went on to reject the defendants' broad reading of *Burks* to hold that

> "[w]hile we recognize the logical and legal merits of [defendants'] analysis [of *Burks*], we are not convinced, in light of *Richardson,* that the Double Jeopardy Clause compels an appellate court to review the sufficiency of evidence offered at trial anytime a defendant raises the question. We are, nevertheless, in order to accomplish the same purpose, prepared to adopt a policy in this circuit of routinely addressing evidentiary sufficiency in criminal cases when a defendant presents the issue on appeal...."

*Douglas II*, 874 F.2d at 1150.

The presumption underlying Anderson's claim is that the evidence in the first trial was insufficient to sustain his conviction, notwithstanding the plain error arising from the court's failure to give his tendered instruction. Anderson's codefendants labored under the same presumption in pressing their claim. In *Douglas II*, we resolved the matter by reviewing the sufficiency of the evidence presented to the jury in both the first and second trial. We held that there was sufficient evidence supporting each of the verdicts that a conspiracy to distribute cocaine and heroin existed, and that each of Anderson's codefendants was a member of the conspiracy. To resolve the present appeal, we must determine whether the evidence at both trials was sufficient to support the jury's conclusion that Anderson was also a member of the conspiracy.

 In determining whether the evidence at trial was sufficient to support the jury's verdict, this court "is constrained to review the evidence in a light most favorable to the prosecution. Our inquiry is limited to a determination whether any rational trier of fact could have found the elements of the offense charged beyond a reasonable doubt." *United States v. Dunigan*, 884 F.2d 1010, 1013 (7th Cir.1989). A jury's verdict must remain intact unless "the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.* (quoting *United States v. Bruun*, 809 F.2d 397, 408 (7th Cir.1987)). To establish the crime of conspiracy to violate the federal narcotics laws, the Government was required to prove that there was an agreement between two or more persons to commit acts proscribed by the federal drug laws, that the defendants were a party to the agreement, and that an overt act was committed "in furtherance of the agreement by one of the co-conspirators." *United States v. Mealy*, 851 F.2d 890, 895 (7th Cir.1988) (quoting *United States v. Noble*, 754 F.2d 1324, 1328 (7th Cir.) *cert. denied*, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985)). This much we have already determined with reference to Anderson's codefendants. At issue here is whether Anderson himself "knew of the conspiracy to [distribute drugs] and that he intended to join and associate himself with its criminal design and purpose." *United States v. Adamo*, 882 F.2d 1218, 1223 (7th Cir.1989) (quoting *United States v. Vega*, 860 F.2d

---

**1.** An issue raised in *Richardson* was whether the defendant was entitled to have his insufficiency of evidence claim reviewed where his first trial ended in a mistrial or hung jury. The Supreme Court's language, which this court found persuasive, was that "*Burks* simply does not require that an appellate court rule on the sufficiency of evidence because retrial *might* be barred by the Double Jeopardy Clause." *Richardson*, 468 U.S. at 323, 104 S.Ct. at 3085.

779, 793 (7th Cir.1988)). Since conspiracies are often conducted clandestinely, circumstantial evidence is sufficient to demonstrate Anderson's participation in the conspiracy. *Adamo*, 882 F.2d at 1223 (quoting *Vega*, 860 F.2d at 793). *But see United States v. Ortiz*, 883 F.2d 515, 523–25 (7th Cir.1989) (Easterbrook, J., concurring) (questioning the propriety of the "slight connection" language employed in some of our conspiracy decisions).

▇ As we noted in *Douglas II*, although the evidence presented in both trials varied at certain points, many of the essential facts were proven in both instances. *Douglas II*, 874 F.2d at 1148. Castro, a Chicago resident, admitted that he had been in the business of dealing drugs for approximately fifteen years. Through some of his customers who were residents or former residents of Danville, Illinois, Castro sought to develop a steady market for cocaine and heroin there. These individuals included:

> Herman Franklin, a Chicago resident and heroin addict who had formerly lived in Danville, Illinois and [who] was a daily customer of Castro; Junior Duckworth, originally a Danville customer of Castro who later moved to Chicago and became a key player in Castro's drug distribution operation; and the defendants [James Douglas, Martin Pruitt, Leon Mason and Anderson], who were the alleged conduits through which Castro distributed heroin and cocaine in the Danville area.

*Id.*

The evidence at both trials showed that between 1983 and July 1984, Castro was introduced to Duckworth, Mason and Anderson, and began selling them cocaine and heroin. Franklin testified that he introduced some of these individuals to Castro for the purpose of dealing drugs.

Franklin himself would deliver drugs for Castro, for which he was often paid with a "fix." Duckworth, in turn, began introducing Castro to many customers in an effort to build up a good business in Danville. Duckworth testified that he subsidized his habit by selling drugs to others.[2]

Testimony at both trials also revealed that Anderson's introduction to Castro came after he and Franklin pooled their money together and drove to Castro's house to purchase a quarter or eighth of a gram of drugs for their own consumption. During the first number of such trips, Anderson waited in the car while Franklin obtained the drugs. Eventually, Franklin introduced Anderson directly to Castro as someone who was "okay." After that point, Anderson began making his purchases directly from Castro. Castro testified that during one of these initial purchases, Anderson told him that he had "some guy" who wanted to buy cocaine. Castro then sold Anderson a half-ounce for $1000. A few weeks later, Anderson returned to Castro's house to make another half-ounce purchase. Anderson did not have enough money to pay for this amount and promised to pay the rest later. Castro testified that over the period in question, he sold half-ounces to Anderson "quite a bit."

Castro further testified that in the Spring of 1984, Anderson introduced James Douglas to him as someone who wanted to buy cocaine. During this trip, Anderson and Douglas bought a half-ounce, but could only afford to pay $300 of the $1000 price. Douglas told Castro that if Anderson did not pay the outstanding balance, he would. About a week later, Anderson and Douglas returned to make another purchase even through they were unable to pay the balance they owed Castro. On the basis of

---

2. In essence, the Government tried members of the Castro ring in two different sets of cases. Castro, Duckworth and their wives were arrested in July, 1984 as a result of an undercover operation. *See United States v. Castro*, 788 F.2d 1240, 1242 (7th Cir.1986). By the time of the trials at issue in the present appeal, Castro and his wife had been convicted of conspiracy to possess with an intent to distribute and distribution of cocaine and heroin. Castro was serving a 15 year sentence. Junior Ray Duckworth was serving a 10 year sentence for the distribution of heroin. His sentence had been reduced from 15 years because of his cooperation with the Government. Jeanne Duckworth's 3 year sentence for distributing cocaine was based on her agreement to cooperate with the Government. Each of these individuals testified at the trials involved here. Herman Franklin, an unindicted coconspirator, also testified at both trials.

their promise to pay later, Castro fronted three-eighths of an ounce of cocaine and three-eighths of an ounce of heroin to the two.

Clarence Severado testified that during the Spring of 1984, he began buying cocaine and heroin from Douglas. Severado also testified that in late May or early June of that year, he drove Anderson and Douglas to Chicago so that the two could make a purchase of cocaine and heroin from Castro. Anderson and Douglas used some of the drugs on the ride back to Danville, and gave some to Severado as *quid pro quo* for driving them to Chicago. Severado testified that the quality of the drugs he was given that night was better than those which Douglas normally sold him. He stated that he knew Douglas would dilute the drugs.

Testimony by Castro also revealed that on one occasion during the Spring of 1984, he came to Danville to deliver drugs and to pick up money owed to him by Douglas. Castro came across Anderson during this trip and obtained Anderson's assistance in finding Douglas. Other testimony of a circumstantial nature shows that Anderson was at Castro's house on numerous occasions, and at times when drugs were being prepared for distribution. The Government also produced telephone records that showed that during April, May and June of 1984, Anderson made 25 telephone calls to Castro's residence. Finally, there is the testimony of Castro that he did not typically front drugs to mere users. He also testified that it would be unusual for a mere user to buy enough drugs to last for several weeks.

In the face of this evidence, substantially the same at both trials, Anderson argues that the Government failed to present direct proof that he distributed any drugs. He argues that the evidence merely shows that he purchased drugs from the conspiracy for his own personal consumption, and that this is insufficient to establish membership in the conspiracy. *United States v. Douglas*, 818 F.2d at 1321. *See also United States v. Mancari*, 875 F.2d 103, 105 (7th Cir.1989). This contention overlooks the sum of the evidence relating to him in each of the two trials. Although he was introduced to the conspiracy on a trip to make a personal purchase, he made numerous subsequent purchases. During one of these purchases he told Castro he had "some guy" who wanted to purchase cocaine. He also introduced Douglas to the conspiracy for the purpose of buying drugs and helped Castro locate Douglas during an effort to collect money Douglas owed as a result of his subsequent drug purchases. It is clear that in each of the two trials, the jury had more than adequate evidence to conclude that Anderson was aware of the conspiracy to distribute drugs, and that he intended to, and in fact did "join and associate himself with its criminal design and purpose." *Adamo*, 882 F.2d at 1223 (quoting *Vega*, 860 F.2d at 793). Accordingly, we find that Anderson's sufficiency of the evidence claim with respect to both trials is unavailing.

## II. The Perjured Testimony Claim

■ Anderson also contends that the trial court erred by failing to grant his motion for a new trial on the grounds that the testimony of Castro, Junior Ray Duckworth, and Sally Young differed from that which they gave at the first trial. Anderson believes that these discrepancies are so great that the testimony of the witnesses at the second trial was perjurious. In *Douglas II*, this court reviewed this exact claim. The trial court had held a hearing on the issue before denying defendants' post-trial motion for a new trial. After reviewing the record and the alleged discrepancies, we concluded that the trial court did not abuse its discretion in denying the motion. *Douglas II*, 874 F.2d at 1160. We found no error in the trial court's factual finding that the alleged discrepancies were mere inconsistencies inherent in any retrial rather than perjury requiring a new trial. *Id.* Anderson presents no evidence to show that the same result is not equally applicable to his claim.

## III. The Franklin Cooperation Claim

Anderson, like his codefendants, contends that the trial court erred when it

denied his motion for a new trial based upon his submission of evidence that Herman Franklin was promised leniency in exchange for his cooperation with the Government. This issue arose after Franklin told counsel for two of the defendants that he had been offered a promise of leniency for his testimony. These attorneys attached affidavits to that effect to their clients' motion for a new trial. The trial court held an evidentiary hearing on the claim. At the hearing, Franklin and the Assistant United States Attorney prosecuting the case denied any such promises. After hearing the evidence, the trial court concluded that Franklin was not offered leniency for his testimony. Although the court believed that Franklin had indeed told the lawyers about such a promise, the court concluded that Franklin's credibility was particularly suspect. The court found that Franklin was the type of "street-wise" individual who was "likely to tell others what he thought they wanted to hear." *Douglas II* at 1161. In *Douglas II*, we upheld the trial court's denial of the motion for a new trial, holding that:

> In the instant case, the trial court found that nothing had been withheld from the defendants when it concluded that no promises were made to Franklin in return for his cooperation and testimony against the defendants. The trial court reached this conclusion after an extensive evidentiary hearing and we cannot say that such a factual finding is clearly erroneous, particularly where as here the issue of witness credibility is so crucial to resolving a direct factual conflict.

As with the previous claim, Anderson does not offer any reason for us to reach a different conclusion with respect to his exact same contention.

### IV. The Newly Discovered Evidence Claim

Anderson's final claim is also one which we fully addressed in *Douglas II*. He argues that the trial court erred in failing to grant his motion for a new trial after he discovered that the Government possessed investigative reports and transcriptions of telephone calls made by Jamie Douglas to Castro and Mason. For approximately six days in June of 1984, Douglas cooperated with the agents investigating Castro's activities, and his cooperation led to the production of these reports and transcripts. In *Douglas II*, we reached the merits of this claim and held that the trial court did not err in denying defendants' motion for a new trial. We analyzed the withheld material under the two-pronged test formulated under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). We concluded that on its face, the material at issue was largely inculpatory, and thus not favorable to the defendants. We went on to hold that even if defendants could have made use of the reports and transcripts to cross-examine the defendants, any use of the material would not have altered the outcome of the trial. *Douglas II,* 874 F.2d at 1163–64.

Our review of these materials causes us to reach the same conclusion with respect to Anderson. The matters contained in the agent's reports are particularly inculpatory for Anderson. They detail many of his trips to Chicago and his purchases of drugs from Castro. They also show that when Anderson was unable to pay all of his bills to Castro, he introduced Castro to other individuals who were interested in buying drugs. Because these materials were inculpatory with respect to Anderson, we cannot conclude that they would have been favorable to his defense. Even if he could have used them to cross-examine any of the witnesses, it is inconceivable that they would have altered the outcome of his trial. Accordingly, the trial court did not err in denying his motion for a new trial on the basis of this newly discovered evidence.

Defendant's conviction is hereby AFFIRMED.