**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anselmo NAVAREZ and Paulin Valles–
Rodriguez, Defendants–Appellants.**

**Nos. 90–2397, 90–2563.**

United States Court of Appeals,
Seventh Circuit.

Argued May 8, 1991.
Decided Jan. 27, 1992.

See also 731 F.Supp. 262.

---

Patricia B. Holmes, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Crim. Div. and Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for the U.S., plaintiff-appellee.

Robert L. Rascia (argued), Rascia & Rascia, Chicago, Ill., for Anselmo Navarez, defendant-appellant.

Domingo F. Vargas (argued), Chicago, Ill., for Paulin Valles–Rodriguez, defendant-appellant.

Before WOOD, Jr.,* COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

On January 10, 1990, defendants-appellants Anselmo Navarez and Paulin Valles–Rodriguez together with Rosalie Huereca, Hector Mendoza–Martinez, and Santos Salgado were charged in a two count indictment with conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2. Huereca, Mendoza–Martinez, and Salgado pleaded guilty before trial.

On April 5, 1990, a jury found Navarez and Paulin Valles–Rodriguez guilty on both counts of the indictment. On June 13, 1990, Navarez was sentenced to 63 months implisonment on each count, the sentences to run concurrently. Rodriguez received a sentence of 78 months imprisonment on each count, to run concurrently. Both appellants challenge their convictions on the ground that there was insufficient evidence to support the jury's guilty verdicts. Rodriguez argues that it was plain error for the district court to allow the government to introduce evidence that $34,000 was found in the basement of a building on 1709 South Paulina, from which Navarez had procured cocaine to sell to undercover officers. In addition, Navarez appeals his sentence on the ground that the district court improperly denied him a reduction in his offense level for minimal or minor participation in the conspiracy pursuant to the United States Sentencing Guideline § 3B1.2. We affirm in all respects.

The drug charges against Navarez and Valles–Rodriguez resulted from an undercover investigation coordinated by the Drug Enforcement Administration ("DEA") and the Drug Enforcement Task Force. On July 17, 1989, at approximately 5:00 p.m., Agent Arthur Chavarria of the DEA received a page from an unfamiliar telephone number. Chavarria had given his page number through confidential in-

formants to persons who were interested in selling drugs. The phone number was subscribed to a coin-operated public telephone located at the Homan Paradise Halo Bar, 2459 South Homan, in Chicago, Illinois. When Chavarria returned the call, the individual answering the phone identified himself in Spanish as Santos, an individual unknown to Chavarria. Chavarria later learned that his full name was Santos Salgado. Salgado told Chavarria that he was told to give Chavarria a call when "they" were ready with the "three" to sell to Chavarria. Agent Chavarria asked Salgado whether he meant "guns or powder" and Salgado replied "powder." Chavarria understood the terms "three" and "powder" to mean three kilograms of cocaine. Agent Chavarria informed Salgado that he would call him later, and the conversation concluded.

Ten minutes later, Chavarria received another page from the same number. When Chavarria called back, Salgado answered the phone and told Chavarria that Salgado had "three ready for sale" and that each would sell for $18,500. They then made arrangements to meet at 3:00 the next day at the McDonald's restaurant located at 26th Street and Kedzie Avenue in Chicago. Chavarria indicated that he would be wearing a yellow shirt and Salgado indicated that he would be wearing a purple or maroon shirt.

The next day, July 18, 1989, Agent Chavarria and his partner, undercover Agent Alex Rodriguez, arrived at the designated McDonald's parking lot at approximately 2:45 p.m. to meet Salgado. Salgado did not appear, although the agents waited for him for forty-five minutes. The agents then returned to the DEA office in downtown Chicago.

Upon arrival there, Chavarria received a page from the same number as the previous pages. Prior to returning the call, Chavarria prepared a tape recording device to record his call. He then called the number. A person unfamiliar to Chavarria an-

---

* Judge Wood, Jr. assumed senior status on January 16, 1992, which was after consideration of this case.

swered the call and Chavarria asked to speak with Santos Salgado. Salgado took the call and explained that he had been late for the planned meeting with Chavarria because he walked to the McDonald's parking lot. Salgado and Chavarria then made arrangements to talk again the next afternoon concerning the sale of the three kilograms of cocaine.

On July 19, 1989, Agent Chavarria contacted Salgado and made arrangements to meet at 3:30 p.m. that day at the McDonald's parking lot on 26th and Kedzie. Salgado informed the agent that he would be wearing a "T-Shirt with an Astros sign on it." This conversation, in Spanish, was also recorded by Chavarria.

At 3:30 p.m. on that day Chavarria and Agent Rodriguez drove to the McDonald's parking lot in an unmarked, undercover vehicle. When they arrived, they walked toward the restaurant. Other undercover agents were maintaining surveillance of the restaurant and parking lot. As they approached McDonald's, Chavarria saw a Hispanic male standing near the restaurant wearing an Astros T-Shirt. Chavarria and Rodriguez then introduced themselves to Salgado. Agent Chavarria then asked Salgado whether he had "them" with him, referring to the three kilograms of cocaine. Salgado looked across the street at another Hispanic male and motioned that individual to join them. The other individual ignored Salgado. Salgado and the agents went into McDonald's and purchased coffee.

When they left McDonald's, Chavarria and Salgado walked toward a pickup truck where the Hispanic male, who had previously been across the street, was now standing. The Hispanic man, later discovered to be co-defendant Rosalie Huereca, introduced himself as "Jaime." Chavarria asked Huereca if he had "three for sale." Huereca responded that he did and that each would cost $18,500. Huereca indicated that he owned a construction company and the Homan Paradise Bar. Chavarria returned to his car and drove away.

On the following day, July 20, 1989, at 2:25 p.m. and 3:50 p.m., Chavarria called Salgado at the Homan Bar. During those conversations, which were recorded, Chavarria, Salgado, and Huereca agreed to meet later that evening at 5:00 p.m. in the parking lot of a Jewel food store located at the corner of Rockwell and Cermak in Chicago. Agent Chavarria stated that he had the money for "the three."

Agents Chavarria and Rodriguez made arrangements to have surveillance agents near the Jewel and they obtained $34,000 in government funds to use as a "flash roll." They placed the money in a brown paper bag and proceeded to the parking lot at Rockwell and Cermak. They arrived there at approximately 5:00 p.m. and parked the undercover car facing north.

Shortly thereafter, a late model brown Pontiac Sunbird, whose license plate number was NA2693, arrived in the parking lot. The car was registered to Anselmo Navarez, of 1709 South Paulina. Appellant Navarez, unknown to the agents at that time, was driving and Huereca was his passenger. Navarez parked twenty yards away from the agents. Huereca and Chavarria approached each other halfway between the cars. Chavarria asked Huereca if he had "them" with him and Huereca replied that he did not. Huereca indicated that he would get the cocaine. Huereca asked the agent to follow him, but Chavarria decided to remain in the parking lot while Huereca went to get the cocaine.

Huereca walked toward the Pontiac Sunbird, when Agent Chavarria asked him if he wanted to see the money. Huereca then walked back towards Navarez's Sunbird, and from the passenger side, looked into the car and asked Navarez if he wanted to see the money. Navarez and Huereca then both accompanied Chavarria to the car where Agent Rodriguez showed them the money. A surveillance agent photographed both men standing near the undercover car, looking at the $34,000. After viewing the money, defendant Navarez and Huereca left the parking lot, having said they would return in approximately twenty-five minutes. The agents waited together in the undercover car.

Surveillance officers John Wheaton and Al Bautista, followed Navarez's Sunbird as

it left the parking lot. The Sunbird drove to a building located at approximately 1708 South Paulina in Chicago. Officer Wheaton parked his car to the north of the Sunbird, facing south and Officer Bautista parked his vehicle south of the Sunbird, facing north. Navarez parked his vehicle across the street from the building located at 1709 South Paulina.

Wheaton observed three individuals, later identified as Valles–Rodriguez, Mendoza–Martinez, and a third individual known only as "Ruiz," cross the street from outside 1709 South Paulina and approach the Sunbird. After two or three minutes, all three men went back across to 1709 South Paulina. Ten minutes later, all three men, again crossed the street, with Ruiz standing a few feet behind the other two. After two or three minutes, they again returned to the vicinity of 1709 South Paulina.

Approximately fifteen or twenty minutes later, Valles–Rodriguez and Mendoza–Martinez returned to the Sunbird while Martinez carried a Jewel grocery bag. Ruiz did not accompany them. Valles–Rodriguez walked approximately three steps behind Mendoza–Martinez as he walked to Navarez's car. Martinez handed the bag to the driver, Navarez, who placed it in the back of the car.

After a short conversation, Navarez pulled into the street where he stopped. Valles–Rodriguez and Mendoza–Martinez got into a green pick-up truck, and pulled into traffic directly behind Navarez's Sunbird. Valles–Rodriguez was the driver. The pick-up truck was registered to Paulin Valles of 1709 South Paulina, Chicago.

Officers Wheaton and Bautista followed the Sunbird and the pick-up truck to the Jewel parking lot at Rockwell and Cermak. The Sunbird driven by Navarez parked alongside the undercover car facing in the opposite direction. Valles–Rodriguez parked at the far west end of the lot, facing the Sunbird and the undercover car. Valles–Rodriguez and Mendoza–Martinez remained in the pick-up truck.

Chavarria approached the Sunbird from the driver's side, closest to Navarez, and asked him if they had "them" with them.

Huereca picked up the Jewel plastic bag from the floor by his feet, lifted it, and opened it. He then gave the bag to Navarez who placed it in his lap and opened it so Chavarria could see inside. Chavarria observed at least two sealed packages of cheesecloth type material and a towel inside the bag. Chavarria asked Navarez and Huereca if it was possible to cut open one of the packages so he could see its contents. Huereca came around to the driver's side of the Sunbird, next to Chavarria. He attempted to cut open one of the packages while it was on Navarez's lap.

Agent Rodriguez activated his four-way hazard lights, thereby giving the pre-arrest signal to the surveillance agents. Agent Rodriguez arrested Huereca while a surveillance agent arrested Navarez. The agents seized the plastic bag from Navarez. Navarez's driver's license and his Illinois identification card reflected his address to be 1709 South Paulina.

As Navarez and Huereca were arrested, Valles–Rodriguez and Mendoza–Martinez attempted to flee by driving out of the parking lot. Surveillance agents stopped and arrested them.

After his arrest, Valles–Rodriguez signed a consent to search form for the basement apartment of 1709 South Paulina. A search of his basement apartment at 1709 South Paulina recovered $34,000 United States Currency in a Marshall Field's shopping bag, several utility bills addressed to Paulin Valles, and a social security card for Paulin Valles–Rodriguez. All these items were admitted in evidence at trial as were the various taped conversations with English translations.

 Valles–Rodriguez first contends that the district court committed plain error in admitting testimony that $34,000 in currency was found in the basement of 1709 South Paulina. He argues that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice to him. *See* FED.R.EVID. 403. He insists that the government could not prove that the cash was his money. The testimony prejudiced him unfairly, he main-

tains, because it greatly increased the likelihood that the jury would believe him to be a drug dealer and find him guilty.

Valles–Rodriguez did not object to the admissibility of that testimony at trial. The experienced district judge, however, recognized that the evidence might be prejudicial after it was admitted and decided to not strike the evidence or give a limiting instruction. The district judge, therefore, exercised his discretion after considering the issue.

As Valles–Rodriguez admits, his failure to raise a Rule 403 objection to the admissibility of this evidence at trial results in waiver of this objection. *United States v. Jackson,* 569 F.2d 1003, 1008–09 (7th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978); *United States v. Hyman,* 741 F.2d 906, 911 (7th Cir.1984). We must only determine whether the district court committed plain error in allowing the government to introduce the testimony concerning the $34,000. *United States v. Holt,* 817 F.2d 1264, 1274 (7th Cir.1987).

■ We reverse on the basis of plain error only when we are " 'convinced that it is necessary in order to avert an actual miscarriage of justice.' " *United States v. Requarth,* 847 F.2d 1249, 1254 (7th Cir. 1988) (quoting *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). We correct errors that were not objected to at trial "if the defendant can demonstrate that he or she probably would have been acquitted but for the erroneously admitted evidence." *United States v. Wynn,* 845 F.2d 1439, 1443 (7th Cir.1988). In addition, we recognize that the district court has broad discretion to determine whether evidence is unduly prejudicial. *E.g., United States v. Chaimson,* 760 F.2d 798, 808 (7th Cir.1985).

The admission of Officer Marino's testimony that he found $34,000, in the basement of 1709 South Paulina, while perhaps prejudicial to Valles–Rodriguez, does not rise to the level of plain error. As the government points out, Valles–Rodriguez and his co-conspirators brought the bag containing cocaine from the residence at 1709 South Paulina to Navarez's Sunbird before Navarez attempted to sell it to the agents. Valles–Rodriguez's driver's license and identification card also listed that address as his residence. Thus, Valles–Rodriguez and his co-conspirators were clearly familiar with the interior of that building. Indeed, Valles–Rodriguez consented to the search of the basement apartment where the $34,000 was found. The testimony concerning the amount of currency found by the government agents was clearly relevant to whether Valles–Rodriguez conspired to distribute cocaine. The other evidence of Valles–Rodriguez's guilt was, as we shall explain, quite substantial. Thus, we cannot find that the admission of Officer Marino's testimony that he found $34,000 inside the basement of 1709 South Paulina was plain error.

The principal issue on appeal is whether there was sufficient evidence to sustain the convictions of Navarez and Valles–Rodriguez on both counts of the indictment. In reviewing the sufficiency of the evidence to sustain a jury's verdict, "we view the evidence, including the reasonable inferences which can be drawn from the evidence, in the light most favorable to the government." *United States v. Camargo,* 908 F.2d 179, 184 (7th Cir.1990). We will affirm the conviction if, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. DeCorte,* 851 F.2d 948, 952 (7th Cir.1988) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis original).

We will first examine the conspiracy convictions of Navarez and Valles–Rodriguez. To prove a conspiracy, the government must show that " '[1] there was an agreement between two or more persons to commit an unlawful act, [2] that the defendant was a party to the agreement, and [3] that an overt act was committed in furtherance of the agreement by one of the co-conspirators.' " *United States v. Muehlbauer,* 892 F.2d 664, 667 (7th Cir.1990) (quoting *United States v. Bruun,* 809 F.2d 397, 410 (7th Cir.1987). At issue here is the requirement

that the government must also prove "a participatory link" between the conspiracy and the defendant. *Muehlbauer,* 892 F.2d at 667 (quoting *United States v. Missick,* 875 F.2d 1294, 1297 (7th Cir.1989). To establish that participatory link and prove that the defendant was a member of a conspiracy, "the government must present sufficient evidence to demonstrate that the defendant knew of the conspiracy and that he intended to join and associate himself with its criminal design ·and purpose." *United States v. Auerbach,* 913 F.2d 407, 415 (7th Cir.1990). *United States v. Anderson,* 896 F.2d 1076, 1078–79 (7th Cir. 1990); *United States v. Adamo,* 882 F.2d 1218, 1223 (7th Cir.1989).

Recently, in *United States v. Durrive,* 902 F.2d 1221, 1228 (7th Cir.1990), we clarified our test for evaluating the sufficiency of the evidence to prove that a particular defendant was a member of a conspiracy. In *Durrive,* we stated that "when the sufficiency of the evidence to connect a particular defendant to a conspiracy is challenged on appeal, 'substantial evidence' should be the test rather than 'slight evidence' or 'slight connection.'" *Id.* As we noted in *Durrive* and *Anderson,* we continue to accept circumstantial evidence as support for a conspiracy conviction. *Id.* at 1229; *Anderson,* 896 F.2d at 1079. Although Navarez and Valles–Rodriguez were convicted one month before we issued our opinion in *Durrive,* we will evaluate their conspiracy convictions under the more stringent standard set forth in *Durrive.*

Neither Navarez nor Valles–Rodriguez argues that the evidence of the existence of the conspiracy is insufficient. Instead, each argues that there is insufficient evidence of his participation in the conspiracy.

■ Navarez asserts that the evidence tying him to the conspiracy is insufficient because he was only Huereca's driver. The government points out that although Navarez was not involved in the telephone negotiations with Agent Chavarria, he drove with Huereca to the Jewel parking lot where the agents were waiting to purchase the cocaine. Navarez also accompanied Huereca to the agent's car to view the $34,000 purchase money. After their conversation with the agents, Navarez drove Huereca to 1709 South Paulina to pick up the three kilograms of cocaine. He was present during the three visits by Valles–Rodriguez, Mendoza–Martinez, and Ruiz, and he placed the bag containing cocaine in the back of his car. He then drove Huereca back to the Jewel parking lot. At the parking lot, Navarez placed the bag containing the cocaine on his lap so Agent Chavarria could see inside it. This evidence, which was substantial, was sufficient to sustain his conspiracy conviction.

■ Even though he was not riding in the car with Navarez and Huereca, Valles–Rodriguez's claim that there was insufficient evidence also lacks merit. Valles–Rodriguez was involved in all three conversations with Navarez and Huereca outside 1709 South Paulina. He was present when Mendoza–Martinez handed the bag containing the cocaine to Navarez. Together with Mendoza–Martinez, he followed Navarez and Huereca to their meeting with the agents. Moreover, his driver's license and identification card revealed that he resided at 1709 South Paulina. A reasonable jury could certainly infer from this evidence that Valles–Rodriguez knew about the purpose· of conspiracy and was a voluntary member. Thus, we conclude that there was substantial evidence that he was a member of the conspiracy.

Navarez and Valles–Rodriguez also challenge their convictions for possession of cocaine with the intent to distribute. "'To prove constructive possession in narcotics cases, the government must show that the defendant had the ability to exercise control over the narcotics, that is, the power to possess them.'" *Camargo,* 908 F.2d at 184 (7th Cir.1990) (quoting *United States v. Molinaro,* 877 F.2d 1341, 1348 (7th Cir. 1989). As the appellants point out, proof of mere association with others who possess narcotics is not enough to convict based on constructive possession. *Id.* "[T]he ability to assure delivery, in combination with association with actual possessors, is" sufficient to sustain a conviction. *Id.; United States v. Manzella,* 791 F.2d 1263, 1266–67 (7th Cir.1986). A conviction

for possession with the intent to distribute may also be sustained if there is evidence that "the defendant was one of a group of conspirators who jointly controlled the narcotics." *Camargo*, 908 F.2d at 184; *Molinaro*, 877 F.2d at 1348; *Manzella*, 791 F.2d at 1266.

The evidence was clearly sufficient to establish that Navarez possessed cocaine with the intent to distribute it. As our review of the evidence sustaining the conspiracy conviction demonstrates, Navarez had the ability to exercise control over the cocaine. The evidence is also sufficient that the conspirators together had the power to possess the cocaine. Therefore, Navarez did as well. Navarez and the conspirators clearly had the power to ensure delivery of the cocaine because they accomplished it. Thus, Navarez's conviction for possession with the intent to distribute must stand.

Valles–Rodriguez's conviction must also stand. Like Navarez he was a member of conspiracy which had control of the cocaine: the conspirators had the ability to ensure delivery of the cocaine. The facts are also sufficient to show that he had actual possession of the cocaine because he escorted Mendoza–Martinez's visit to the Sunbird driven by Navarez and because he escorted Navarez to the Jewel parking lot. Thus, his sufficiency of the evidence challenge is without merit.

Navarez's final argument is that district court improperly denied him a two-point reduction in his offense level for minimal or minor participation in the conspiracy pursuant to Guideline § 3B1.2. *See* United States Sentencing Commission Manual, *Guidelines Manual*, § 3B1.2 (1991). Section 3B1.2 allows the sentencing judge to reduce the offense level of a defendant who plays a "minimal," or a "minor" role in criminal activity. To merit the adjustment, a defendant must show that he was *"substantially less culpable* than the average participant." *United States v. Velasquez*, 890 F.2d 717, 720 (5th Cir.1989) (quoting United States Sentencing Commission, *Guidelines Manual*, § 3B1.2, comment (background)). The district court reviewed the evidence of Navarez's role in the offense and requested the probation officer to rank the conspirators with respect to culpability. In addition, the presentence investigation noted that as a middle-level cocaine distributor Navarez's role could not be described as minor. The district court accepted the finding of the probation officer that Navarez played neither an aggravating nor a mitigating role and should be sentenced between the most and least culpable of the conspiracy defendants.

"We review a district court's determination of whether a defendant is a 'minor' or a 'minimal' participant only for clear error." *United States v. Franklin*, 902 F.2d 501, 509–10 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990); *United States v. Tholl*, 895 F.2d 1178, 1186 (7th Cir.1990); *United States v. Miller*, 891 F.2d 1265, 1270–71 (7th Cir.1989). Based upon our review of the record, we cannot conclude that the district court erred in determining that Navarez was more than a minor participant in the conspiracy. Therefore, we find that the district court did not err in denying Navarez a two-point reduction for being a minor participant in the conspiracy.

We Affirm the convictions of Paulin Valles–Rodriguez and the convictions and sentence of Anselmo Navarez.