**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dena Anne REQUARTH,**
**Defendant–Appellant.**

**No. 87–1726.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1988.
Decided May 23, 1988.

---

Thomas R. Harris, Champaign, Ill., for defendant-appellant.

Thomas E. Karmgard, Asst. U.S. Atty., J. William Roberts, U.S. Atty., Danville, Ill., for plaintiff-appellee.

Before CUDAHY, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Dena Anne Requarth was convicted of conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; possession of cocaine in violation of 21 U.S.C. § 844; and interstate travel to aid a criminal enterprise in violation of 21 U.S.C. §§ 841(a)(1) & 846 and 18 U.S.C. §§ 1952(a)(3) & 2. Requarth appeals from her conviction on the conspiracy charge on the ground that the jury instructions were improper.

## I.

Approximately once every two weeks from August 1986 until December 1986 Requarth's boyfriend, Randy Jordan, sold one to two ounces of cocaine to Thomas Conner. On December 12, 1986, Conner gave Requarth $4,000 in payment for cocaine that he had previously purchased from Jordan. Three days later, Conner became an informant to the Illinois State Police, and told them about a trip Jordan was planning to Florida to purchase cocaine. On December 17, Conner, who was wearing a concealed taping device, met with Jordan and Requarth at Jordan's sister's home in Decatur, Illinois. During this meeting, Jordan told Conner that he was going to Fort Lauderdale, Florida to purchase a kilogram of cocaine.[1] The meeting lasted approximately twenty minutes.

On December 19, Jordan and Requarth drove from Decatur to the Indianapolis, Indiana airport in Requarth's car. When they arrived at the airport Jordan purchased a single ticket to Florida. At that point, Requarth did not plan to accompany him to Florida, which she argues demonstrates her lack of intent to join the conspiracy. Later, however, Jordan purchased a second ticket for Requarth. They then flew to Orlando, Florida and on to Miami.

At the Miami International Airport Jordan and Requarth were met by a man named Dwight from whom Jordan had purchased cocaine on three or four prior occasions. On December 20, Dwight took Jordan and Requarth to his apartment where Jordan purchased 300 grams of cocaine. Requarth saw the cocaine before it was placed in the trunk of Dwight's car for overnight storage. The next day Dwight gave the cocaine to Jordan who packaged it in two separate plastic bags; he taped one of the bags to his stomach and Requarth taped the other bag between her legs. Once the cocaine was secured, Dwight drove Jordan and Requarth to the airport where they boarded a plane for Indianapolis. While in flight, Requarth removed the bag of cocaine from beneath her clothing and gave it to Jordan. Jordan also removed the bag that was taped to his stomach and placed both bags of cocaine into a case he had carried on the airplane.

When they arrived in Indianapolis, Jordan and Requarth returned to her car. Requarth, who was carrying the case, removed the cocaine and put it in the glove compartment. They then drove to Urbana, Illinois. When they reached Urbana, the Illinois police, who had been monitoring Jordan and Requarth, signaled to Jordan to stop the car. Requarth took the cocaine out of the glove compartment and tried to throw it out of the car, but Jordan stopped her. Having failed to dispose of the cocaine, Requarth decided to hide it in a tissue box which she placed on the floor of the car. The police eventually arrested Jordan and Requarth; when they searched the car they discovered the hidden cocaine.

On January 8, 1987 a grand jury returned a four-count indictment against both Jordan and Requarth; a superseding indictment was returned on February 12, 1987. The four counts of the superseding indictment were: Count I conspiracy to possess with intent to distribute and to distribute cocaine; Count II possession of cocaine with intent to distribute, and alternatively possession of cocaine (a lesser-included offense of Count II); Count III interstate travel on December 19, 1986 to aid

---

1. The only conversation that Conner had with Requarth during this meeting related to the destruction of twenty-five grams of cocaine by a third person. The cocaine in question had been stored at the home of Lynn Born. Conner and Requarth discussed the fact that neither of them believed Born's story of how the cocaine was destroyed.

a criminal enterprise; and Count IV interstate travel on December 21, 1986 to aid a criminal enterprise.

Jordan pleaded guilty to Counts II and III of the indictment. On Count II he was sentenced to one year incarceration, followed by a parole term of three years, and on Count IV he was sentenced to five years' probation. As part of the plea agreement, Counts I and III were dismissed against Jordan. Requarth proceeded to trial. On March 19, 1987 a jury found her guilty of Counts I, IV, and alternate Count II, but not guilty of Counts II and III. Requarth was sentenced on alternate Count II to six months' incarceration and a $1,000 fine; on Counts I and IV she received a suspended sentence and was placed on probation for five years.

Requarth challenges her conviction on the ground that the jury was improperly instructed on the conspiracy charge. She argues that the district court erred when it refused to give her tendered "presence" instruction.[2] Requarth contends that because this instruction was not given, the jury may have convicted her on the conspiracy count simply because she was present when illegal activities occurred. Requarth, however, failed to preserve this objection for appeal. We conclude that the district court's refusal to give Requarth's proposed presence instruction did not constitute plain error, we therefore affirm.

## II.

■ The first issue we must address is whether Requarth preserved her objection to the jury instructions for appeal. "No party may assign as error any portion of

the charge or omission therefrom unless he[/she] objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he[/she] objects and the grounds of his[/her] objection." Fed.R.Crim.P. 30. To preserve an objection to the district court's failure to give a proposed jury instruction, a party must do more than simply submit the proposed instruction for the court's consideration. *United States v. Markowski*, 772 F.2d 358, 363 (7th Cir.1985), *cert. denied*, 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986); *United States v. Jackson*, 569 F.2d 1003, 1009 (7th Cir.), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978). Rather, the defendant must "object, on the record, to the judge's refusal to tender the defendant's instructions, and must clearly state the reasons for his or her objections." *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir.1987) (*citing United States v. Green*, 779 F.2d 1313, 1320 n. 6 (7th Cir. 1985)).

■ Requarth submitted her presence instruction (defendant's instruction 2) and other instructions at the jury instruction conference. The court rejected her presence instruction stating "[d]efendant's tendered instruction 2 is denied. It's an argument about the definition of knowingly. See also Court's 16."[3] Tr. p. 410. Requarth's counsel did not object to the court's ruling or make any statement regarding the purpose or importance of her tendered presence instruction. Requarth also failed to comment or raise any objection to the court's rejection of her instruction when given an opportunity to do so at the close of the court's charge to the jury. Because

**2.** Requarth's proposed "presence" instruction was taken verbatim from Seventh Circuit Jury Instruction 3.04. As tendered, the instruction stated that "[p]resence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish the defendant's guilt."

**3.** Jury instruction 16, which the district court did give, contained a reference to the fact that the defendant's "mere presence" in the vicinity of an illegal activity was insufficient to prove that she possessed a controlled substance. In relevant part, that instruction stated:

When I use the expression "possessed cocaine" in these instructions, I mean possession in either an actual or constructive way. Cocaine is a controlled substance.

Mere presence in the vicinity of the controlled substance or mere knowledge of its physical location, standing alone, however, does not constitute possession.

You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that a defendant had actual or constructive possession, either alone or jointly with another.

she did not object to the court's exclusion of her proposed presence instruction, the defendant did not preserve this issue for appeal.

### A.

Requarth raises two arguments in an effort to avoid the conclusion that she waived her objection to the court's denial of her presence instruction. First, she contends that we should look at the instructions conference as a whole, rather than focusing on her failure to object to the court's rejection of a specific proposed instruction. Requarth argues that her submission of proposed instruction 2 related back to her objection to the prosecution's instruction 12 (definition of conspiracy).[4] When Requarth objected to the prosecution's definition of conspiracy instruction, however, she did not mention the need for a presence instruction. Rather, her objection to instruction 12 was based on the fact that it did not require the government to prove that she "knowingly and intentionally" participated in the conspiracy. Further, when the court rejected her instruction 2, Requarth did not argue that it was required in light of instruction 12; in fact, she did not object at all to its omission.

Federal Rule of Criminal Procedure 30 specifically requires litigants who disagree with a court's decision to omit a proposed instruction to state "distinctly the matter to which he[/she] objects and the grounds of his[/her] objection." Fed.R.Crim.P. 30. The district court must be alerted to the fact that a party objects to a ruling it has made and informed of the basis for the objection, *Markowski*, 772 F.2d at 363, because unless the district court is squarely faced with a party's objection it cannot consider the propriety of the objection.

*See United States v. Kehm*, 799 F.2d 354, 363 (7th Cir.1986) ("The function of the objection is to avoid avoidable mistakes at trial."). Requarth's argument—that we must look at the instructions conference as a whole and create specific objections simply from the interrelation of proposed instructions—undermines the purpose of the specific objection requirement, which is to alert the district court to its alleged error at a point in time when the court still has an opportunity to correct it. Requarth's approach must therefore be rejected. It remains the defendant's duty to bring his or her objections to jury instructions to the district court's attention. *Jackson*, 569 F.2d at 1009. Requarth, however, neither indicated an objection to the court's omission of her instruction 2, nor stated the grounds for her objection.

■■■ Requarth also argues that she did not waive her objection to the court's rejection of her presence instruction because the district court itself preserved her objection for appeal. Immediately following the court's charge to the jury, and before the jury retired to deliberate, the court gave the litigants an opportunity to raise any further objections to the jury instructions outside the presence of the jury. Specifically, the court asked: "Are there any further objections or requests concerning the Court's charge to the jury, aside from the ones raised at the conference on jury instructions ...?" Tr. p. 468. Although Requarth did not raise any objections at that time, she argues that the court's incorporation of the objections previously made during the conference preserves her right to appeal the court's denial of her instruction 2.

---

4. The prosecution's proposed instruction 12 (definition of conspiracy) to which Requarth objected stated in part:

> To show that the defendant became a member of the claimed conspiracy, the government must prove beyond a reasonable doubt, from the defendant's own acts or statements, that she was aware of the common purpose and was a willing participant.

The defendant objected to this instruction because she argued that the government was re-

quired to prove that she knowingly and intentionally became a member of the conspiracy, rather than just that she was a willing participant. The district court overruled that objection, and Requarth does not challenge that ruling on appeal. In her objection to instruction 12, Requarth did not raise the need for a presence instruction, nor did she raise any objection when the district court rejected the defendant's proposed instruction 2.

Specific objections to instructions that are distinctly made at an instructions conference may be incorporated by reference. *United States v. Hollinger*, 553 F.2d 535, 543 (7th Cir.1977). In this case, however, Requarth did not make any specific objection to the court's denial of her presence instruction during the instructions conference that could be incorporated by reference. We therefore conclude that Requarth failed to preserve this objection for appeal.

### III.

■ Requarth's failure to preserve her objection for appeal, however, does not end the inquiry. Where a litigant fails to meet the requirements of Federal Rule of Criminal Procedure 30, we analyze the party's objection under the "plain error" standard. *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir.1987); Fed.R.Crim.P. 52(b).[5] A plain error is one that is "not only palpably wrong but also likely to cause the outcome of the trial to be mistaken." *United States v. Kehm*, 799 F.2d 354, 363 (7th Cir.1986). A reversal on the basis of plain error can be justified "only when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice." *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). *See also Douglas*, 818 F.2d at 1320 ("plain error must be of such a great magnitude that it probably changed the outcome of the trial.").

■ To determine if the district court's failure to give Requarth's presence instruction was plain error, we must look at the instructions as a whole, *United States v. Perlaza*, 818 F.2d 1354, 1358 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 176, 98 L.Ed.2d 130 (1987), and determine

"whether the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." *United States v. Jackson*, 569 F.2d 1003, 1010 (7th Cir.), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978).[6] If the essential elements of the allegedly erroneously omitted instruction were adequately covered by the court's other instructions, the omission will not constitute plain error. *See, e.g., Kehm*, 799 F.2d at 363 (no plain error where "mere presence" instruction refused in conspiracy case but adequately covered by remaining instructions). *See also United States v. Xheka*, 704 F.2d 974, 987 (7th Cir.), *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983) ("The court need not give a proposed instruction if the essential points are covered by those that are given.").

■ As in *Kehm* and *Xheka*, the essence of Requarth's proposed presence instruction was conveyed to the jury through the court's other instructions. First, the court defined "knowingly" to be much more than mere presence:

> When the word "knowingly" is used in these instructions, it means that the defendant realized what she was doing, acted intentionally, and was aware of the nature of her conduct, and did not act through ignorance, mistake or accident. To act knowingly does not mean that the defendant had to realize she was violating the law.

Jury instruction 13. Further, in its instruction on the elements of conspiracy, the court instructed the jury that:

> To prove the offense of conspiracy as charged in Count 1 of the indictment, as outlined for you in these instructions, the government has the burden of proving beyond a reasonable doubt each of the following propositions:
> First, that the alleged conspiracy existed at or about the times claimed.

*Wynn*, 845 F.2d 1439, 1442 n. 7 (7th Cir.1988). We do not address the question of whether the district court erred in rejecting Requarth's proposed instruction 2 because we conclude that in any event the omission of that instruction did not create plain error.

---

**5.** Federal Rule of Criminal Procedure 52(b) provides:

> **Plain error.** Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

**6.** Of course the plain error doctrine presupposes the existence of an error. *United States v.*

Second, that the defendant knowingly became a member of the conspiracy.

Jury instruction 17. Thus, in order to find the defendant guilty of the conspiracy charge, the jury had to find that the government had proved beyond a reasonable doubt that she knowingly (as defined in instruction 13) participated in the conspiracy. This clearly requires a finding beyond mere presence at a location where criminal acts occurred. Finally the court instructed the jury that:

Any person who knowingly aids or abets the commission of a crime is guilty of that crime. However, that person must knowingly associate with the criminal venture, participate in it, and try to make it succeed.

Jury instruction 15. See also *supra* note 4 (text of instruction 12 which required the government to show that Requarth was a willing participant in the conspiracy). Read as a whole, the jury instructions adequately informed the jury that it could not convict Requarth on the conspiracy charge merely because she was present at the scene of the illegal acts or associated with other conspirators. In fact, the instructions given in this case are very similar to the instructions that were approved by this court in *Xheka,* 704 F.2d 974.

There was ample evidence to support Requarth's conviction on the conspiracy charge,[7] and the essential elements of instruction 2, which the district court rejected, were adequately covered by the remaining jury instructions. The court's decision not to give the defendant's tendered presence instruction did not create an actual miscarriage of justice. We therefore cannot find that the district court committed plain error when it denied Requarth's presence instruction. The judgment of conviction is

AFFIRMED.

7. As noted, Requarth taped the cocaine to her body, boarded an airplane with it, removed it during the flight and gave it to Jordan, carried it to her car, hid it in the glove compartment, tried to dispose of it, and eventually hid it in a tissue box on the floor of the car. This evidence is adequate to support the jury's conviction on the conspiracy charge.