**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Simons ADDO, Defendant–Appellant.**

**No. 92–1281.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1992.

Decided March 16, 1993.

Barry R. Elden, Richard K. Kornfeld, Asst. U.S. Attys., (argued), Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Gwendolyn D. Anderson, (argued), Anderson & Associates, Chicago, IL, for defendant-appellant.

Before POSNER and COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

COFFEY, Circuit Judge.

Simons Addo and Edward Duah were charged with possession with intent to distribute a controlled substance (heroin) and with a conspiracy to distribute and to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Duah was granted pretrial release after his appearance before the court when his aunt posted her residence as security guaranteeing Duah's appearance at his plea hearing. Duah subsequently pled guilty in federal court to the conspiracy charge, but prior to Addo's trial, Duah disappeared and, as of the date of the oral argument, remained at large. The jury found Addo guilty on both counts and he was sentenced to sixty months' imprisonment followed by four years' supervised release and deportation. We affirm the conviction.

## I. BACKGROUND FACTS

Agent Antonio Smith of the Drug Enforcement Agency ("DEA") was the government's primary witness to the relevant facts.[1] On March 12, 1991, agents of the DEA developed a plan to make an undercover 200–gram heroin purchase from Edward "James" Duah. A confidential informant ("informant"), Rafeek Muhammed, at the request of the DEA, made a phone call to Duah to set up the purchase. The DEA decided that Agent Smith would play the undercover role of purchaser, while other agents would provide surveillance. Agent Smith obtained $20,000 from the DEA safe and recorded the serial numbers. Thereafter, he accompanied the informant to the arranged drug purchase location, an Amoco gas service station at the corner of Marine

---

1. Neither the trial transcript nor the record reveal how the DEA learned that Duah was dealing in drugs nor does the record disclose why Rafeek Muhammed agreed to cooperate with the DEA.

Drive and Lawrence Avenue in Chicago, Illinois.

Agent Smith testified that, after waiting for fifteen minutes at the Amoco station, he instructed the informant to call Duah to inquire about the delay. After the informant made two calls from a nearby pay phone, the two of them awaited Duah's arrival. About fifteen minutes after the second call, at approximately two o'clock in the afternoon, Duah arrived at the Amoco station in a black 1990 Toyota pickup truck and parked near Agent Smith's car. The informant exited Agent Smith's car and walked over to the passenger side of Duah's truck where he and Duah appeared to converse with each other. The informant and Duah then walked over to Agent Smith, who was standing at the rear of his car, and the informant introduced Edward Duah to Agent Smith stating "this is my man, James." (The informant was apparently referring to Duah as "James"). Duah asked to see the money, so at this time, Duah and Agent Smith entered the back seat of Smith's car where Smith opened a brown briefcase, revealing the $20,000 he had obtained from the DEA. After Duah informed Smith that he would deal with him, Duah and the informant departed in Duah's truck.

A surveillance agent testified that he saw Duah speak into a mobile phone while driving in the pickup truck, and that he observed Duah drive around the block before returning to the Amoco station. Duah dropped off the informant at the Amoco station, and proceeded southbound on Clarendon Street. The surveillance agent testified that the pickup later made a U-turn, and stopped at the side of a taxicab, at which time defendant Addo entered the pickup truck. Duah and Addo returned to the Amoco station and parked near Smith's car. Agent Smith's testimony revealed that the informant exited Smith's car and spoke to Addo and Duah, both of whom remained in the truck. The informant returned to Smith's car and stated to Smith that the heroin was in the truck. At this time, Agent Smith walked over to Duah's truck and asked to see the heroin. Smith testified that Addo raised his shirt and

pulled out from his waistband one clear plastic bag displaying a brown powdery substance. Smith, upon seeing what he suspected to be heroin, gave a pre-arranged arrest signal, and the surveillance agents moved in and arrested Addo and Duah. The agents searched Addo and found two plastic bags of suspected heroin tucked in his waistband. After returning to the DEA office, Agent Smith field tested the substance and found it contained heroin. Later at the DEA laboratory, a DEA forensic chemist examined the substance and positively determined it to be forty percent heroin.

DEA Agent Wysocki testified that the agents transported Addo to the DEA offices, where Addo signed a "waiver of rights form." In the course of an interview with Agent Wysocki, Addo admitted to being the source of 200 grams of heroin found on his possession at the Amoco station, and admitted that earlier in the day he had received a phone call from Duah to arrange for the heroin sale. During Agent Wysocki's questioning, Addo also admitted to receiving 800 grams of heroin twice a month from a woman named Akua in New York.

On May 29, 1991, Duah pled guilty to the conspiracy of possessing heroin with intent to distribute. As part of his plea agreement Duah agreed to: (1) cooperate with the government as a witness in Addo's trial; (2) arrange drug deals with other conspirators; and, (3) testify in their trials and/or before a Grand Jury. Before Addo's trial, Duah disappeared after meeting with his probation officer and has not surfaced since. The government filed a motion *in limine* seeking to prevent Addo from commenting on the absence of the witness Duah at trial.

Addo's defense counsel objected to the granting of the motion *in limine*, but the district court overruled her objection stating:

"If you want to refrain before I rule on the first request, which is that you refrain from arguing an adverse inference by Mr. Duah's absence if you want my

[sic] to put off ruling on that until you have had a chance, I will enter it provisionally until you have had a chance to try to convince me, which probably would mean that you can't argue it—and I don't know how you would, anyway, because you are not supposed to argue in opening statements. You are not supposed to argue, anyway. So I will grant number one."

Tr. at 7.

At the end of the trial when instructing the jury, the district court gave the *Pinkerton* conspiracy instruction explaining that if the jury finds beyond a reasonable doubt the existence of the conspiracy and that the defendant was a member of the conspiracy then the defendant may be held responsible for the overt acts of other conspirators done in furtherance of the conspiracy. Addo's attorney objected to this instruction,

"All defense lawyers object to that. I object. I don't think that there is any evidence in this record to support a *Pinkerton* instruction. I don't want to get into a lot of arguments. I don't normally do that, Judge. We object to that, your honor."

(Tr. 182). The district court overruled her objection and gave the instruction.

## II. ISSUES

Addo raises two issues on appeal: (1) whether the district court abused its discretion in temporarily granting the government's motion *in limine*, barring (until further ruling) the defense from arguing that the jury should draw an adverse inference against the government because of Duah's absence at trial, and (2) whether the government presented sufficient evidence of a conspiracy and Addo's involvement in it to warrant the tendering of a *Pinkerton* instruction to the jury.

## III. DEFENDANT'S OBJECTION TO THE MOTION *IN LIMINE*

■ Prior to the trial, the government moved the court to grant a motion *in limine* barring the defendant from arguing an adverse inference based on Duah's absence at trial. The trial court granted the motion barring counsel from commenting on Duah's absence during opening statements, but agreed to allow the defense counsel to research the law during a recess in the court proceedings and renew her opposition to the government's motion before the conclusion of the trial. Defense counsel never raised the matter of the motion *in limine* again during the course of the trial, nor did she offer a missing witness instruction. On appeal, the defendant challenges the trial court's grant of the motion *in limine*. The government argues that the defendant has waived any challenge to the trial judge's provisional ruling on the motion *in limine* because the defense counsel failed to renew her opposition to the motion and failed to present any case law in support of her argument to convince the trial court to reconsider its prior ruling.

When the trial court granted the government's motion *in limine*, the court explained, "I will grant the motion for purposes of today [opening argument] and you can then take up— ... Just don't use [a missing witness argument] in the opening statement." Tr. at 6. The court added on the record, "if you want my [sic] to put off ruling on [the motion *in limine*] until you have had a chance, I will enter it provisionally until you have had a chance to try and convince me...." Tr. at 7. This circuit has previously stated that "[i]f a motion is not acted upon, a litigant had better renew it. He may not lull the judge into thinking that it has been abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of the forgotten motion." *United States v. Taglia*, 922 F.2d 413, 416 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). In *United States v. Wilson*, 962 F.2d 621, 625 (7th Cir.1992), this court applied the *Taglia* waiver doctrine to a motion to suppress (as opposed to a motion for severance in *Taglia*) and held that waiver was "equally applicable in both contexts." *Id.* We are of the opinion that the *Taglia* principle applies in the present context because defense counsel abandoned her objection

when she failed to accept the trial court's invitation to present relevant case law in support of her position. Thus the defendant "lull[ed] the judge into thinking that [the objection to the motion had] been abandoned." *Wilson,* 962 F.2d at 425.

The trial court entered a grant of the motion *in limine* for purposes of the opening statements, however, the court left open its final ruling and extended an invitation to the defense counsel to renew her challenge to the motion with the presentation of supporting case law. Thus the ball was in the defendant's court to challenge the granting of the motion *in limine.* For some reason, the defense failed to respond to the judge's ruling again during the trial. This may have been an oversight on the part of defense counsel in the midst of a busy trial or a well-calculated trial strategy. Whatever the reason, the record reflects that the defense was clearly given the opportunity to raise the matter again before the trial judge and failed to do so. Accordingly, the defense may not challenge the merits of this ruling on appeal. This case is distinguishable from the situation in *United States v. Kaplan,* 554 F.2d 958, 966 (9th Cir.), *cert. denied, Dolwig v. United States,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977), in which the trial court informed the defendants that "renewal [of their motion for severance] would be useless." Thus, in *Kaplan,* the defendants had no obligation to raise the matter again to preserve their appeal. *Id.* In *United States v. Brown,* 870 F.2d 1354, 1360 (7th Cir.1989) (citing *Kaplan,* 554 F.2d at 966), we commented, "when the defendant is able to show that refiling the motion would be useless [as in *Kaplan* ], he may be excused from engaging in what is then a futile exercise." In contrast to *Kaplan,* the trial court in *Brown* invited the defendant to refile his motion for severance thus demonstrating that refiling would not be useless or a "futile exercise." *Brown,* 870 F.2d at 1360. The facts in the present case are similar to *Brown* and distinct from *Kaplan* for the trial judge, in the case before us, made it clear that his ruling only applied during the opening statement and invited the defense counsel to renew her

challenge to the government's motion if and when she found case law in opposition to the motion *in limine.* Thus it clearly would not have been a "futile exercise" for Addo's defense counsel to renew her opposition to the motion *in limine.* It is also interesting to note that the defense never offered a missing witness instruction. This failure serves as additional support for our holding that the defendant Addo waived the issue of commenting on the missing witness. Therefore, because defense counsel failed to accept the trial court's invitation to renew and reargue the motion or offer a missing witness instruction, the challenge to the motion *in limine* is deemed waived.

■■ Were we to hold that the defendant has not waived his appeal, we would affirm the district court's provisional ruling granting the motion *in limine* on the merits. Whether to allow a comment on a missing witness is "committed to the sound discretion of the district courts," *United States v. Sblendorio,* 830 F.2d 1382, 1394 (7th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988), and will only be overturned for "serious error." *Id.* The standard for permitting a comment on an unavailable witness is twofold. "[1] If a party has it peculiarly within his power to produce witnesses [2] whose testimony would elucidate a transaction, the fact that he does not do it creates a presumption that the testimony, if produced, would be unfavorable." *United States v. Mahone,* 537 F.2d 922, 926 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). The defendant fails on both prongs of the test. First, we refuse to accept the defendant's argument based on *United States v. Keplinger,* 776 F.2d 678, 702 (7th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986), that a witness who is unavailable to either party is deemed in the control of one party (the government in this case) simply because the witness has a bias towards that party. We believe *Keplinger* applies only to the case where the witness is *available* to both parties. *Keplinger* is inapplicable in this case where the witness was

*unavailable* to either party. Our conclusion is confirmed by the recent opinion of this court in *United States v. Easley*, 977 F.2d 283, 286 (7th Cir.1992), which held, "The rule is that a defendant is not entitled to a 'missing witness' instruction where a government witness is equally *unavailable* to both parties." *Id.* (emphasis added). Secondly, the testimony of the missing witness must "elucidate the transaction." *Mahone*, 537 F.2d at 926. There is no evidence that Duah's testimony would have been anything more than cumulative in light of the eyewitness testimony of Agents Smith and Wysocki, the confiscated heroin, and the post-arrest confession of Addo. Thus the trial court did not commit "serious error" in granting the government's motion *in limine*. Even if there was an error in refusing to allow the defendant to argue a negative inference from the witness' absence at trial, the defendant must demonstrate that the error had a "substantial influence on the outcome of the case." *United States v. Pirovolos*, 844 F.2d 415, 421 (7th Cir.1988), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988). In light of the overwhelming evidence of the defendant's guilt, the defendant has failed to make a showing of any error much less an error having a substantial influence on the outcome of the case.

## IV. THE *PINKERTON* INSTRUCTION

The defendant maintains that the court erred in permitting the giving of the *Pinkerton* instruction arguing that the testimony at trial was insufficient to support the conspiracy count.[2] The defendant argues that because there was no evidence of plotting, preparing, planning or agreeing on his part it was error to allow the *Pinkerton* instruction. We will construe the defendant's argument as a challenge to the sufficiency of the evidence to establish the conspiracy. The defendant bears a heavy burden when challenging the sufficiency of the evidence. *United States v. Olson*, 978 F.2d 1472, 1478 (7th Cir.1992). In *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), the Supreme Court stated that a sufficiency of the evidence challenge will be upheld if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This circuit recently stated that "we will not reweigh the evidence or judge the credibility of witnesses" when reviewing the sufficiency of the evidence. *United States v. Maholias*, 985 F.2d 869 (7th Cir.1993).

In *Olson*, we summarized the elements of a conspiracy:

> "[t]o prove a conspiracy, the government must show that '[1] there was an agreement between two or more persons to commit an unlawful act, [2] that the defendant was a party to the agreement, and [3] that an overt act was committed in furtherance of the agreement by one of the co-conspirators.'"

*Olson*, 978 F.2d at 1478 (quoting *United States v. Navarez*, 954 F.2d 1375, 1380 (7th

---

**2.** The government claims that the defendant has waived any challenge concerning the tendering of the *Pinkerton* instruction because defense counsel made only a generalized objection. "No party may assign as error any portion of the charge or omission therefrom unless he[/she] objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he[/she] objects and the grounds of his[/her] objection." *United States v. Requarth*, 847 F.2d 1249, 1252 (7th Cir.1988) (quoting Fed. R.Crim.P. 30). In *Requarth*, the defense counsel merely offered a proposed instruction but failed to object when the court refused to give that instruction. This court stated that "the defendant must 'object, on the record, to the judge's refusal to tender the defendant's instruc-

tions, and must clearly state the reasons for his or her objections.'" *Id.* at 1252 (quoting *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir. 1987)). In the present case, defense counsel did object to the proposed *Pinkerton* instruction:

> "All defense lawyers object to that. I object. I don't think that there is any evidence in this record to support a *Pinkerton* instruction. I don't want to get into a lot of argument. I don't normally do that, judge. We object to that, your honor."

Tr. at 182. Because the defense counsel clearly stated as her reason for objecting that she did not "think that there is any evidence in this record to support a *Pinkerton* instruction," she has properly preserved the issue for appeal. *Requarth*, 847 F.2d at 1252.

Cir.1992)). In *United States v. Durrive*, 902 F.2d 1221 (7th Cir.1990), this Circuit clarified the test for reviewing the sufficiency of the evidence, we stated, "when the sufficiency of the evidence to connect a particular defendant to a conspiracy is challenged on appeal, 'substantial evidence' should be the test rather than 'slight evidence' or 'slight connection.'" *Id.* at 1228. Accordingly, we examine the record to determine whether there is "substantial evidence" linking the defendant Addo to the conspiracy thus supporting the trial court's decision to issue the *Pinkerton* instructions to the jury. Essentially, the defendant Addo argues that there was no agreement between he and Duah to commit a criminal act because he merely arrived on the scene at the conclusion of the transaction. The direct and circumstantial evidence in the record undermine Addo's argument. Circumstantial evidence "may appropriately be utilized to demonstrate both a conspiracy and the defendant's participation in the conspiracy." *United States v. Herrero*, 893 F.2d 1512, 1532 (7th Cir.), *cert. denied*, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990) (quoting *United States v. Vega*, 860 F.2d 779, 793 (7th Cir. 1988). In fact, because conspiracies occur in secret, "[n]ot only is the use of circumstantial evidence permissible, but circumstantial evidence may be the sole support for a conviction." *Id.* at 1532 (quotation marks and citations omitted). "Circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable." *Id.* (citations omitted).

After reviewing the record, it is clear that Addo not only had knowledge of the conspiracy but he actively participated in it because: (1) Duah telephoned Addo to arrange the drug transaction; (2) Addo, as previously arranged, met with Duah a few blocks from the Amoco station; (3) Addo accompanied Duah in the truck back to the drug sale at the Amoco station; (4) Addo lifted his shirt and displayed the heroin to the undercover agent; and (5) Addo stated in a post-arrest confession that he agreed to meet Duah to supply 200 grams of heroin to the buyer. A defendant's involvement in a conspiracy is certainly evident from the fact that he knowingly and intentionally carried out several acts in furtherance of the conspiracy. *See United States v. Diaz*, 876 F.2d 1344, 1354 (7th Cir.1989).

The evidence makes clear that the defendant not only knew of the ongoing negotiations but he was an active participant in the conspiracy and in fact acted as the supplier of the heroin. Because there is substantial evidence to support a conviction for conspiracy to possess and distribute narcotics, the evidence is also sufficient to merit the *Pinkerton* instruction. A *Pinkerton* instruction informs the jury members that if they initially determine beyond a reasonable doubt that a conspiracy existed and the defendant was a member of the conspiracy then they may find the defendant responsible for offenses committed by other co-conspirators in the furtherance of the conspiracy. The evidence of the existence of the conspiracy is overwhelming, as is the evidence establishing Addo's participation in the conspiracy. We hold that it was appropriate for the district court to tender the *Pinkerton* instruction to the jury.

The judgment of the district court is AFFIRMED.