### UNITED STATES of America, Plaintiff–Appellee,

v.

### Hector HOYOS, Defendant–Appellant.

No. 92–3086.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1993.

Decided Aug. 24, 1993.

---

Matthew R. Bettenhausen, Asst. U.S. Atty. (argued), Office of U.S. Atty., Crim. Div., Barry R. Elden, Asst. U.S. Atty., Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, for plaintiff-appellee.

Brian M. Collins (argued), Chicago, for defendant-appellant.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Hector Hoyos ("Hoyos") appeals his conviction for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). In this appeal, Hoyos challenges the district court's limitation of his cross-examination of law enforcement officers, the conscious avoidance or "ostrich" instruction presented to the jury and the sufficiency of the evidence to convict him. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291. We affirm.

## I.

Hoyos' charges arose from two purchases of cocaine made by Agent Richard Gumiran of the Illinois State Police ("Gumiran"). In the first purchase, Gumiran exchanged four ounces of cocaine for $5000 with Howard Roberson ("Roberson"), after negotiating with Roberson's supplier, Dario Ceron ("Ceron"), who refused to make the exchange himself. At that negotiation, Gumiran requested a lower price for dealing directly with Ceron in the future. Ceron gave Gumiran his pager number along with the false name "Mario." Immediately after the first purchase, law enforcement officers followed Ceron to Hoyos' apartment.

During the next month, Gumiran and Ceron had several telephone conversations and meetings to arrange the second purchase— this time for a half-kilogram of cocaine. At the last of these meetings, after agreeing on a price for the cocaine and designating a particular parking lot in which to meet at noon the next day to make the exchange, Ceron told Gumiran that he had to go meet someone. Ceron then went to Hoyos' apartment and took him to lunch, where he asked Hoyos to meet him at 1:30 p.m. the next day in order to accompany him to a meeting. Ceron later contacted Gumiran, changing their meeting time to 2:00 p.m. the next day and also changing the location of the parking lot where they were to meet.

Hoyos met Ceron at about 1:15 p.m. the next day. Together, they left for the meeting in a white van driven by Ceron. Hoyos admitted that he noticed that Ceron was carrying a blue bag with him, but claimed that he was unaware of its contents. When they neared the parking lot where they were to meet, Ceron parked on a residential street several blocks away. Ceron and Hoyos then walked the rest of the way to the parking lot. Ceron told Hoyos that Hoyos should call him "Mario" while the person they were to meet was around. After Ceron and Hoyos waited for fifteen or twenty minutes, Gumiran arrived. Ceron pointed Gumiran out to Hoyos. Hoyos went up to Gumiran's car, got in, and told him that Ceron wanted them to go several blocks away from where they were.[1] When Gumiran refused to go anywhere else, stating "I figured we were gonna do it [sic] the deal here ..." and "I got my money in the car with me right now," Hoyos attempted to persuade him to do so. (Gov't Ex.Tr. 1 at 1.) When Gumiran persisted in his refusal, Hoyos left Gumiran's car, saying that Gumiran would have to talk to "Mario" about the situation. (*Id.*)

---

1. Gumiran was wearing a microphone during the entire second purchase. A transcript of the conversations was presented by the government at trial.

At that point, Ceron got in the front seat of Gumiran's car. Hoyos eventually got into the back seat, but the testimony at trial did not make clear how much of the remaining conversations between Gumiran and Ceron he was present for.[2] Ceron attempted to convince Gumiran to drive to where the van was, but Gumiran again refused. After both Ceron and Hoyos had exited the car, Gumiran drove away. Unable to find the van keys, which Hoyos had been holding, Ceron and Hoyos went back to the meeting place and paged Gumiran, who found the keys in his car and agreed to return. When Gumiran returned, Ceron again tried to convince him to drive to the van. After Gumiran refused, Ceron decided to bring the van to the parking lot. He began to walk to the van, but then turned around and asked Hoyos to get the van. When Hoyos returned with the van, Ceron opened the van door, grabbed the blue bag, returned to Gumiran's car, and gave the bag to Gumiran. Gumiran gave the arrest signal, and Ceron and Hoyos were arrested.

A federal grand jury charged Hoyos in a three-count indictment. Count 1 was for conspiracy to possess with intent to distribute cocaine; Counts 2 and 3 were substantive counts relating to each of the two cocaine purchases described above. At trial, Hoyos testified in his own defense. In his testimony, Hoyos did not dispute the sequence of events presented by the government, but instead claimed that he was not aware that a cocaine sale was taking place. A painter by trade, Hoyos claimed that he thought he was going to meet someone about a painting job. Hoyos admitted that the circumstances sur-

rounding this alleged meeting regarding a painting job were suspicious, and that he never asked any questions. Hoyos also admitted that he did not mention the painting job the entire afternoon, claiming that Ceron had told him not to because Ceron would be doing the talking regarding the work.

After trial, a jury found Hoyos guilty on Counts 1 and 3,[3] and the district court imposed concurrent 63–month prison sentences, followed by 5 years of supervised release. Hoyos appeals his conviction, challenging: (1) the district court's limitation of his cross-examination of law enforcement officers, (2) the presentation of an "ostrich" instruction to the jury, and (3) the sufficiency of the evidence to convict him.

### II.

■ Hoyos argues that his cross-examination of law enforcement officers was unconstitutionally restricted in two instances. First, Hoyos alleges that he was unconstitutionally prohibited from cross-examining the arresting officers regarding a beating they allegedly administered to him at the time of the arrest. The record does not support Hoyos' argument, however. Just prior to trial, the government made an oral motion in limine to prevent defense counsel from asking questions or making arguments regarding a beating Hoyos alleged he received from the arresting officers. Defense counsel requested that the district court reserve ruling on this issue until it developed during cross-examination. As a result, the district court granted the motion, subject to reconsideration upon request when the issue arose.[4] Thus, Hoyos' cross-examination of the offi-

---

**2.** After the initial interchange between Gumiran and Hoyos, the transcript shows Hoyos speaking in only one place. Gumiran testified that Hoyos did respond to one of Gumiran's comments shortly after Ceron got into Gumiran's car. The exchange went as follows:

> GUMIRAN: Well I met you, I drove all the way here, I'm not going to, you know Mario; It's just I played the same thing with John take me here, take me there, I'm not gonna [sic] be doing that, because I was afraid he was going to rip me off and I say, I trust you, but I'm not gonna go no place I just want to stay right here. I feel more comfortable here cuz [sic] there's nobody here.
>
> HOYOS: He says we're gonna [sic] move somewhere else.

(Gov't Ex.Tr. 1 at 3.)

**3.** Count 2 was dismissed at the close of the government's case, because the evidence was insufficient to connect Hoyos to the first cocaine purchase.

**4.** The court's exact words were as follows:

> THE COURT: I will grant the motion subject to reconsideration upon request of the defendant outside of the presence of the jury.
> MR. COLLINS [defense counsel]: That's fine.
> THE COURT: At such time you feel it might be relevant, then ask for a sidebar and we will consider it. At some point, outside the presence of the jury, we will consider it and I will

cers on this issue was never actually prohibited. Instead, defense counsel simply never attempted to raise the issue on cross-examination of any of the officers who testified.

█ Failure to accept the district court's invitation to renew his challenge to the motion *in limine* bars Hoyos' challenge to the merits of the ruling on appeal. *United States v. Addo*, 989 F.2d 238, 242 (7th Cir. 1993). In *Addo*, the district court temporarily granted a motion *in limine*, explicitly inviting the defense to renew its opposition to the motion before the conclusion of trial. *Id.* at 241–42. When defense counsel failed to do so, the *Addo* court held that the issue was waived. *Id.* at 242. The *Addo* court relied on this Circuit's position that "[i]f a motion is not acted upon, a litigant had better renew it. He may not lull the judge into thinking that it has been abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of the forgotten motion." *Id.* at 241 (citing *United States v. Taglia*, 922 F.2d 413, 416 (7th Cir.), *cert. denied*, ─── U.S. ───, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991)). Here, Hoyos similarly lulled the district judge into thinking that his objection to the motion *in limine* had been abandoned. Therefore, Hoyos' waived his objection to the motion *in limine* as it related to the cross-examination of the arresting officers.

█ Defense counsel made no attempt to elicit testimony regarding the alleged beating until Hoyos took the stand. At that point, the district court sustained the government's objection to the testimony, stating that "[i]t is not admissible here." (Tr. 363.) A district court's evidentiary rulings are not subject to reversal unless there is a clear abuse of discretion. *United States v. Burrell*, 963 F.2d 976, 997 (7th Cir.), *cert. denied*, ─── U.S. ───, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). We upheld a district court's ruling under similar circumstances in *United States v. Thompson*, 807 F.2d 585, 589 (7th Cir. 1986), *cert. denied*, 480 U.S. 938, 107 S.Ct. 1585, 94 L.Ed.2d 774 (1987). The defendant in *Thompson* sought to show bias on the part of a correctional officer based on his distribution of Ku Klux Klan literature. Defense counsel did not mention the Ku Klux Klan when cross-examining the officer, but did attempt to raise it later, when the defendant took the stand. The district court sustained the government's objection to this testimony. We upheld the district court despite the defendant's arguments that the cross-examination of the officer was unconstitutionally restricted and that he had a right to demonstrate the officer's bias. *Id.* Similarly, the district court did not abuse its discretion in the instant case.

█ Hoyos also challenges the district court's refusal to allow cross-examination of Agent Donald Rospond ("Rospond") regarding his testimony before the grand jury that indicted Hoyos. Because Hoyos would not stipulate that the substance seized from Ceron at the time of their arrest was cocaine, the government called Rospond to testify to the chain of custody. Rospond's direct examination was limited to that purpose, taking up less than two pages of transcript. On cross-examination, Hoyos attempted to show that Rospond's grand jury testimony implied that Hoyos used the word "cocaine" when speaking to Gumiran. The district court sustained the government's objection to this testimony, because it did not serve to impeach Rospond's testimony and because it was outside the scope of the direct examination. Federal Rule of Evidence 611(b) limits cross-examination "to the subject matter of the direct examination and matters affecting the credibility of the witness." Furthermore, "the management of cross-examination is peculiarly committed to the district court's discretion ..." *Burrell*, 963 F.2d at 997 (quoting *United States v. Carter*, 910 F.2d 1524, 1530 (7th Cir.1990), *cert. denied*, ─── U.S. ───, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991)). The district court's assessment that this testimony was outside the scope of direct examination and ineffective to impeach Rospond's chain of custody testimony was correct. Therefore, the district court did not abuse its discretion in sustaining the government's objection to it.

### III.

█ Hoyos argues that the district court erred by giving the jury an "ostrich" or

rule whether you can do it or not. The motion is granted at this point.

(Tr. 4.)

conscious avoidance instruction. The district court gave the following instruction:

> You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word.

(Tr. 488.) This instruction was taken verbatim from this Court's opinion in *United States v. Ramsey*, 785 F.2d 184, 190 (7th Cir.), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986), and we have repeatedly approved its use. *United States v. Gonzalez*, 933 F.2d 417, 433–34 (7th Cir. 1991) (listing cases).

"An 'ostrich' instruction is appropriate when 'the defendant claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate indifference.'" *United States v. Bigelow*, 914 F.2d 966, 970 (7th Cir.1990), *cert. denied*, 498 U.S. 1121, 111 S.Ct. 1077, 112 L.Ed.2d 1182 (1991). This "deliberate indifference" can be the result of a "mental, as well as a physical effort—a cutting off of one's normal curiosity by an effort of will." *United States v. Giovannetti*, 919 F.2d 1223, 1229 (7th Cir.1990). Finally, "in assessing the district court's determination to give [an 'ostrich'] instruction, we must review the evidence and any reasonable inferences that can be drawn from that evidence in the light most favorable to the government." *Bigelow*, 914 F.2d at 970.

Viewing the evidence in the light most favorable to the government, there was a sufficient basis for the "ostrich" instruction in this case. Though Hoyos testified that he thought he was going on a meeting to discuss a painting job, he admitted that he did not ask any questions regarding where the job would be, what materials he would need or how much he would be paid. Also, Hoyos never raised any questions about the odd circumstances surrounding the meeting, though he admitted that they were suspicious. (Tr. 391.) For example, Ceron told Hoyos to refer to him by the false name Mario, but Hoyos never inquired why. Hoyos did not ask for an explanation of the fact that they were scheduled to meet in a parking lot, or the reason that, upon arriving there, it was necessary to ask Gumiran to move to another location. Finally, Hoyos acknowledged that Gumiran mentioned that he had "the money" in the trunk. (Tr. 401.) Though Hoyos again admitted that this made him suspicious, he did not ask any questions. Thus, the record clearly illustrates that Hoyos' alleged lack of knowledge about the cocaine transaction could only have resulted from the "cutting off of [his] normal curiosity." Therefore, the evidence was more than sufficient to uphold the district court's decision to give the "ostrich" instruction.

### IV.

Finally, Hoyos challenges the sufficiency of the evidence to convict him. "A defendant attacking the sufficiency of the evidence has a heavy burden and only where the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *United States v. Tipton*, 964 F.2d 650, 657 (7th Cir.1992) (citation and internal quotation marks omitted). In ruling on a sufficiency challenge, we "view the evidence in the light most favorable to the government and defer to the jury's reasonable inferences drawn therefrom." *United States v. Beall*, 970 F.2d 343, 345 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1291, 122 L.Ed.2d 683 (1993). To prove a conspiracy to distribute cocaine under 21 U.S.C. § 846, the government must show that: (1) there was an agreement between two or more persons to distribute cocaine, and (2) defendant was a party to this agreement. *United States v. Collins*, 966 F.2d 1214, 1219 (7th Cir.1992).

Hoyos does not challenge the existence of an agreement to distribute cocaine involving Ceron and Roberson. Instead, Hoyos claims that he was not a party to the agreement, because he did not act "in any manner to advance the ends of the conspiracy or the delivery of narcotics." (Appellant's Br. at 27.) The evidence presented at trial was sufficient to link Hoyos to the conspiracy, however. In addition to the evidence we recited in reviewing Hoyos' challenge to the "ostrich" instruction, Hoyos also told Gumiran that it would be necessary to drive to a

different location. When Gumiran resisted, Hoyos made a substantial effort to convince him to do so. Finally, when it became clear that Gumiran would not move to a different location, Hoyos retrieved the van containing the cocaine, which allowed the exchange to go forward. This act was clearly unnecessary to further a discussion regarding a potential painting job, raising the inference that Hoyos intended the exchange to go forward. In sum, the evidence, when viewed in the light most favorable to the government, was sufficient for a rational jury to find that Hoyos was a party to the conspiracy. Therefore, Hoyos' challenge to the sufficiency of the evidence must fail.

## V.

In accordance with this opinion, Hoyos' conviction and the resulting sentence are both AFFIRMED.