In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1292

United States of America,

Plaintiff-Appellee,

v.

Marla Lynn Cones,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana,
South Bend Division.
No. 3:97-CR-2(02)RM--Robert L.
Miller, Jr., Judge.

Argued October 1, 1999--Decided October 28, 1999

Before Cudahy, Easterbrook, and Kanne,
Circuit Judges.

Easterbrook, Circuit Judge.  Customs officials intercepted a package originating in Vietnam and containing 248 grams of heroin bound for "Porsche Jones" in Elkhart, Indiana. The drug had been placed inside a book. Agents made a controlled delivery. No one was home when the agents first attempted to deliver the package, and they left a standard Postal Service notice. On the second attempt, again no one was there, but a note instructed the Postal Service to "Leave Package for Porsche Jones between door!" The agents did just that, then watched. Three hours later, Marla Cones (whose nickname is "Porche") arrived, learned that the note directing the Postal Service to redeliver the parcel had been removed, and quickly left. Her car, driven by Azibuike Iroh, performed a series of maneuvers that seemed calculated to detect or evade surveillance. Iroh drove Cones to see the friend to whose home the package had been delivered. A half hour after the initial visit to the mailbox, the car returned and Cones retrieved the parcel. When the

car drove away a second time, the driver again attempted to elude pursuit--but failed. Cones and Iroh were arrested and charged with heroin smuggling. A jury found Iroh guilty, and we affirmed last year. United States v. Doe, 149 F.3d 634 (7th Cir. 1998). Cones was convicted by the judge following a bench trial.

Iroh and Cones each asserted that the other was solely responsible for the drugs. Neither persuaded the trier of fact; judge and jury concluded that Cones and Iroh were partners in crime. The package was mailed to a friend's apartment, where few knew that Cones would receive mail, and it bore a variation of her name that could not have been widely known. Still, Cones contends, the evidence was insufficient. She maintains that she arranged for the package to go to a friend's place only because some mail had been stolen recently from her own mailbox. She blames Iroh for duping her into acting as a conduit for drugs--which Cones insists that Iroh ordered. What evidence was there, she inquires, that she knew the package contained drugs?

There was plenty of evidence. Drug dealers don't mail narcotics to strangers without prior arrangement. Cones was no stranger to the drug trade; she was carrying a small amount of crack cocaine when arrested. She obtained the package in a manner that suggests knowledge that the contents were illicit. Why visit a friend's house twice, with evasive driving before and after retrieving the parcel, if she thought that the package contained only a book? Why did she think that Iroh would order a book from Vietnam to be delivered to an alias at a third party's house? Normal people would be more than a little suspicious. (Cones knew that the package was not addressed to her right name and told her friend to write "Porsche Jones" on the postal slip.) What is more, this is not the first time a "book" had arrived from Vietnam. Near the time of the first, Iroh gave Cones some $5,000. A trier of fact sensibly could infer that Cones knew that the first package contained drugs and that the second was likely to do so too.

Cones offers three objections to her sentence. The first two are frivolous. The district court's conclusion that

Cones committed perjury at trial, and the consequent enhancement for obstruction of justice, is well supported by the evidence--so well supported that her lawyer did not object, dooming the appellate contest by forfeiture as well as by the district court's findings. Likewise with the district court's decision not to reduce her offense level for playing a minor role. Cones was held responsible only for the drugs in the second package from Vietnam, and she was not a minor participant in that transaction. United States v. Mojica, 185 F.3d 780, 790-91 & n.10 (7th Cir. 1999); United States v. Brown, 136 F.3d 1176, 1185-86 (7th Cir. 1998); United States v. Burnett, 66 F.3d 137, 140 (7th Cir. 1995). But her third objection is more substantial.

Guideline 2D1.1(c) provides a base offense level of 26 for a person who is responsible for between 100 and 400 grams of "any mixture or substance containing a detectable amount" of heroin. Two extra levels for obstruction of justice produced a total offense level of 28, and a sentencing range of 78 to 97 months for a person with a criminal history category of I. The district court decided to depart upward six levels on the ground that the substance in the book, which was 71% heroin, was of "unusually high purity." See sec.2D1.1 Application Note 9:

Trafficking in controlled substances, compounds, or mixtures of unusually high purity may warrant an upward departure, except in the case of pcp or methamphetamine for which the guideline itself provides for the consideration of purity (see the footnote to the Drug Quantity Table). The purity of the controlled substance, particularly in the case of heroin, may be relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution. Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to

the source of the drugs. As large quantities are normally associated with high purities, this factor is particularly relevant where smaller quantities are involved.

Level 34 has a sentencing range of 151 to 188 months' imprisonment, and the judge chose the bottom of this range--which is 54 months higher than the top of the range for level 28. Cones wants us to hold that the departure is unauthorized.

The district judge's rationale for the extra six levels is that 250 grams of 70% pure heroin would produce 2.5 to 5.8 kilograms of heroin at traditional street-level purities, which run from 3% to 7%. A person responsible for between 1 and 3 kilograms of heroin has a base offense level of 32; the 3-10 kilogram range draws a base offense level of 34. The district court's six-level departure put Cones in the equivalent of level 32, on the ground that she received the equivalent of 2.5 kilos of street-purity heroin. The question we must consider is whether a conversion to street-level purity is an authorized reason for departure.

A judge may depart from the Guidelines when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission". 18 U.S.C. sec.3553(b). See also Koon v. United States, 518 U.S. 81 (1996). Drug purity cannot reasonably be described as a circumstance that the Commission has overlooked or inadequately considered. Both the relevant statutes and the Guidelines use the formula "mixture or substance containing a detectable amount" of a given drug. E.g., 21 U.S.C. sec.841(b)(1)(A)(i). The possibility of converting to a uniform purity--whether 100% purity or "street-level" purity--was considered and deliberately rejected. See United States v. Marshall, 908 F.2d 1312 (7th Cir. 1990) (en banc), affirmed under the name Chapman v. United States, 500 U.S. 453 (1991); United States v. Neal, 46 F.3d 1405 (7th Cir. 1995) (en banc), affirmed, 516 U.S. 284 (1996). When defendants who sold a highly dilute drug objected that the "detectable amount" approach greatly magnifies their punishment compared with people who sell a more concentrated drug,

both this court and the Supreme Court responded in the cases just cited that this outcome is the result of deliberate choices by Congress and the Sentencing Commission. Statutes and Guidelines allow conversion to a uniform purity for pcp and methamphetamine, and the Guidelines now allow a conversion for lsd, which reinforces the conclusion that for other drugs Congress and the Commission have rejected a common-purity approach. For the same reasons that Chapman and Neal preclude reducing the effective quantity at defendants' behest on the ground that the drugs had been diluted to street level, we now hold that judges should not increase the effective quantity at prosecutors' behest on the ground that street-level purity is the superior measure. Chapman and Neal do not depend on whose ox is being gored. For drugs other than lsd, pcp, and methamphetamine, the sentence must be calculated without an adjustment to a uniform purity level.

Application Note 9 does not invite district judges to disregard the rule that the entire mixture or substance must be weighed without regard to purity. The Note makes a different point: that higher purity often is associated with a higher position in the distribution network, which may justify a higher sentence. Higher-ups do more damage to society, and the drugs found in their possession when arrested may be only a small fraction of the drugs that have passed through their hands. Moreover, people higher in the chain often are harder to detect and prosecute. Greater social harm, and a lower probability of detection, both justify higher sentences in order to maintain deterrence. Guideline 3B1.1 provides directly for an enhancement when evidence establishes that the defendant was an organizer, leader, manager, or supervisor. If the criminal activity involved five or more persons, or was otherwise extensive, the offense level goes up by 3 or 4; otherwise the increase is 2 levels. Application Note 9 permits an increase when it is not possible to establish a supervisory role in the conventional way, and the position in the organization must be inferred from the purity of the drug. Like other courts of appeals, we think that this is the only function of Application Note 9: a higher sentence is appropriate only when purity "is probative of the defendant's role or

position in the chain of distribution." United States v. Iguaran-Palmar, 926 F.2d 7, 10 (1st Cir. 1991) (dictum); United States v. Mendoza, 121 F.3d 510, 515 (9th Cir. 1997). The note does not authorize courts to substitute a uniform-purity approach for the contrary method deliberately adopted by Congress and the Sentencing Commission. What is more, when higher purity implies a higher role in a criminal organization, departure should be limited to the number of levels that could be awarded under sec.3B1.1; otherwise a less formal method of proof would undermine the decision to cap at 4 the number of offense levels that may be assigned to bigwigs. An original source of drugs might receive a greater adjustment, we suggested in Marshall, 908 F.2d at 1324, but few defendants in heroin or cocaine prosecutions fit that description.

Perhaps there are rare cases in which an increase under sec.3B1.1 could be coupled with a departure under Application Note 9, for a total of more than 4 levels, though this smacks of double counting, but we need not decide today whether cases such as United States v. Rodriguez, 63 F.3d 1159, 1168-69 (1st Cir. 1995), which allow this duplication, are persuasive. Our point is that departure should reflect the considerations identified in Application Note 9 rather than judicial disagreement with the Guidelines' failure to calculate sentences based on a purity-adjusted measure of drug quantity. This conclusion is compatible with our decision to affirm a six-level departure for Iroh. His only argument was that departure for purity is never proper, a line of argument rejected as at odds with Application Note 9. See Doe, 149 F.3d at 640. Cones has made a different and better argument than her co-defendant.

Did Cones occupy a prominent or especially dangerous role in the chain of distribution? We need not remand to find out, because the district court has addressed this question already. After quoting the passage in Application Note 9 that mentions "a prominent role in the criminal enterprise and proximity to the source of the drugs", the judge continued: "There isn't any evidence to tell me that that describes you. There isn't any evidence to tell me that that

describes Mr. Iroh. . . . I simply do not know." At oral argument, the prosecutor also disclaimed any contention that Cones was hard to apprehend; to the contrary, he implied that every member of a distribution chain deserves a higher sentence (because breaking a single link breaks the chain) and that Cones deserves extra harsh treatment because recipients of drugs mailed to this country are espe cially easy to catch. (The proposition that sentences should rise the easier the defendant is to apprehend gets things backwards.) The district judge made it clear that his only reason for adjusting Cones's sentence was a belief that drug quantities as a rule should be converted to street-level purity. As Koon said, however, departures must be limited to unusual cases, ones not handled by the Guidelines' general rules. There is nothing at all unusual about Cones's case, and the district judge's reason would apply to a large portion of all federal drug prosecutions.

Cones's conviction is affirmed, but her sentence is vacated, and the case is remanded with instructions to resentence her within the range for level 28.