In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2321

United States of America,

Plaintiff-Appellee,

v.

Morris D. Hunt,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 96-CR-30102-WDS--William D. Stiehl, Judge.

Argued February 20, 2001--Decided November 29, 2001

   Before Easterbrook, Evans, and Williams,
Circuit Judges.

   Williams, Circuit Judge.  Morris Hunt was
prosecuted for and convicted of
conspiracy to distribute cocaine and
crack cocaine (by aiding and abetting the
conspiracy), and money laundering. He
appeals his conviction and sentence,
challenging the sufficiency of the
evidence for his conspiracy conviction,
the district court's admission of hearsay
testimony at trial and its calculation of
his relevant conduct and offense level
for sentencing. We affirm the conviction,
but vacate the sentence and remand the
case to the district court for
resentencing.

I.  BACKGROUND

A.  The Facts

   Morris Hunt and Eugene Birge were
friends, who had known each other for
several years. Hunt sold insurance
policies to Birge, and they frequently
traveled together at Birge's expense. But
there was more to their friendship.
   Birge was a leader of a major cocaine
trafficking conspiracy in the East St.
Louis, Illinois area. Hunt knew that
Birge was involved in drug dealing, but
it is unclear if he fully knew to what
extent. At any rate, Hunt helped Birge

handle some of the money from the drug conspiracy. Hunt purchased a 1992 Acura Legend for Birge, that cost approximately $23,500, in the name of his insurance company with loans he obtained. Birge paid Hunt for the car in cash. In addition, Birge went to Hunt's office several times, and Hunt helped Birge to count money. They counted at least $20,000 each time.

Sometime later, agents in the federal Drug Enforcement Administration ("DEA") began investigating Birge's drug conspiracy. The investigation resulted in the indictment of twenty-three individuals for conspiracy to distribute cocaine and cocaine base ("crack cocaine"), including Hunt for his role as aider and abetter, and money launderer, in the conspiracy. The indictment was obtained in part with the assistance of Birge, who decided to cooperate with the government. Unfortunately, he was murdered several months before the first indictment was returned. Twenty-two of the defendants decided to plead guilty; only Hunt proceeded to trial.

B.  District Court Proceeding

At trial, several co-conspirators-- including James Birge, Jr., Clifton Bernard, and Darwin Rockett--testified concerning the drug trafficking conspiracy and their knowledge of Hunt's involvement in the conspiracy, largely regarding the purchase of the Acura Legend. DEA Special Agents Michael Rehg and Larry Fox, and Internal Revenue Service ("IRS") Special Agents Kevin Martens and Joe Zingrichtestified about their conversations with Hunt, covering the Acura Legend purchase and the money he counted with Birge. They also relayed information that they had gained from their investigations, including conversations with Birge regarding Hunt's purchase of the Acura Legend.

Hunt did not testify or present any evidence in his defense. He was convicted of conspiracy to distribute cocaine and crack cocaine under 21 U.S.C. sec.sec. 2, 841(a)(1) and 846,/1 and convicted of money laundering under 18 U.S.C. sec.sec. 1956(a)(1)(B)(i) and (2).

At sentencing, the district court calculated Hunt's relevant conduct and

offense level for sentencing under section 2D1.1 of the United States Sentencing Guidelines for a drug trafficking conspiracy. The district court converted the amount of money Hunt laundered and counted into kilograms of cocaine to apply the guideline, using the street price of one kilogram of cocaine. The district court held him accountable for 4 kilograms ($83,500): 1 kilogram for the Acura Legend purchase ($23,500) and 3 kilograms for counting money with Birge ($60,000) at least three times, which was the district court's interpretation of "several." The district court then denied Hunt a reduction as a minor participant in the conspiracy, because he was held accountable only for the money he actually laundered and counted. Hunt was sentenced to 97 months in prison. He now appeals.

II.  ANALYSIS

A.  Sufficiency of the Evidence

   Hunt challenges the sufficiency of the evidence to support his conviction for conspiracy to distribute cocaine and crack cocaine. His challenge is a formidable one, which rarely carries the day. See United States v. Hickok, 77 F.3d 992, 1002 (7th Cir. 1996) ("He follows in the footsteps of countless criminal defendants who have made similar arguments in this court, and, like them, he bears a 'heavy burden' . . . ."). We review the evidence in the light most favorable to the government and will uphold the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

   Hunt was convicted of conspiracy because of his role as an aider and abetter of the conspiracy, and therefore in this challenge, we must consider the elements for aiding and abetting to determine the sufficiency of the evidence, not conspiracy. Aiding and abetting has three elements, requiring "knowledge of the illegal activity that is being aided and abetted, a desire to help the activity succeed, and some act of helping." United States v. Zafiro, 945 F.2d 881, 887 (7th Cir. 1991) (emphasis in original). Hunt argues that the government did not

present sufficient evidence to support an inference of his knowledge of the conspiracy and that his assistance was too trivial to support an inference of a desire to see the conspiracy succeed. We address each of these arguments in turn.

The evidence of knowledge and desire in this case is circumstantial, but straightforward. Hunt and Birge had been friends for some time. They traveled together on numerous trips, which were paid for by Birge. Hunt admitted to DEA agents that he believed Birge was involved in drug dealing. Birge was in fact involved in drug dealing, and on a very large scale. From September 1992 until at least February 1996, members of the conspiracy acquired and distributed approximately 174 kilograms of cocaine in the East St. Louis area, and Birge was a source of supply for the mid-level dealers in the conspiracy. On several occasions, Birge appeared at Hunt's office with at least $20,000, and Hunt helped Birge to count the money. Birge also gave Hunt approximately $23,500 in cash to purchase an Acura Legend, which Hunt purchased, arranging for loans and putting the automobile in the name of his insurance company.

This circumstantial evidence of Hunt's knowledge is not overwhelming, but is sufficient. A rational juror could have reasonably inferred from the friendship, the trips, and the drug money in the Acura Legend purchase and in the counting, that Hunt and Birge, one of the principals in a drug trafficking conspiracy, had a close relationship of mutual trust and confidence. A rational juror could have also reasonably inferred that the large quantities of cash that they counted and that was involved in the car purchase pointed to a much broader operation than Birge alone. And finally, a rational juror could have reasonably inferred that Hunt's activities constituted significant participation to further the objectives of the conspiracy. Added together, the facts and inferences reflect knowledge of the conspiracy. A rational juror could have believed beyond a reasonable doubt that Hunt knew he was helping a drug conspiracy.

We also believe that despite the enormity of the conspiracy, Hunt's participation was not trivial. Hunt

laundered at least $23,500 in the Acura Legend deal, washing the conspiracy's dirty money through his legitimate business, which concealed the true source of the funds and protected the conspiracy. Hunt also counted at least $60,000, providing "in-house" accounting for the conspiracy counting its cash. His assistance was critical to maintaining the secrecy and continuation of the conspiracy.

But the basic question here is whether a rational juror may infer beyond a reasonable doubt from the facts presented Hunt's desire to see the conspiracy succeed. We believe, on the basis of all the evidence, a rational juror could make such an inference. Plugging potentially life-threatening holes of the conspiracy is not the type of trivial assistance we have before rejected. Compare United States v. Irwin, 149 F.3d 567, 574 (7th Cir. 1998) (rejecting as trivial defendant's assistance of providing a credit card to a drug conspirator to make purchases totaling $7,000 over two years, because the conspirator's "use of the charge card did not hide his identity because the card was issued in his name," and "his use of the card created a paper trail leading to him").

B.  Evidentiary Rulings

Hunt next challenges several evidentiary rulings by the district court, in particular its (1) denial of his request for a Santiago hearing, (2) admission of hearsay testimony by co-conspirators Birge, Jr., Bernard, and Rockett, whotestified concerning conversations with Birge, and (3) admission of hearsay testimony by DEA and IRS agents, who also testified concerning conversations with Birge. We ordinarily review the district court's evidentiary determinations for abuse of discretion./2 See, e.g., United States v. Smith, 230 F.3d 300, 307 (7th Cir. 2000). That is to say, we ask whether a reasonable person could agree with the decision of the district court. We address each challenge separately and find that there was no abuse of discretion.

1.  Santiago hearing.

In United States v. Santiago, 582 F.2d 1128 (7th Cir. 1978), overruled on other

grounds by Bourjaily v. United States, 483 U.S. 171 (1987), we articulated the appropriate standard for determining the admissibility of hearsay evidence under the co-conspirator exception, concluding that "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible" under Federal Rule of Evidence 801(d)(2)(E). Id. at 1134. In cases following that decision, we have identified several options available to the district court to determine the admissibility of Santiago evidence: (1) make a preliminary determination based on the government's proffer of evidence, (2) rule on each statement as elicited at trial based on the evidence presented at that point, (3) conditionally admit the evidence without a proffer subject to eventual supporting evidence to be presented sometime at trial (risking, of course, a possible mistrial), or (4) hold a "full-blown" pre-trial hearing to consider all the evidence and make a decision. See, e.g., United States v. McClellan, 165 F.3d 535, 553-54 (7th Cir. 1999).

Although we have identified these several alternatives, we have often discouraged the fourth alternative, a full- blown pre-trial hearing, as inefficient and potentially duplicative. Id. at 554. Following this instruction, the district court opted for the first alternative, conditionally allowing the challenged hearsay statements on the government's proffer of evidence and delaying a final determination until trial, and it did not abuse its discretion by proceeding in this manner.

2. Hearsay testimony by co-conspirators.

Hunt argues that the district court erred by concluding that the testimony of Birge, Jr., Bernard, and Rockett that recounted statements made by Birge was admissible hearsay under the co-conspirator exception--Rule 801(d)(2)(E). To fulfill the requirements of the exception, the government must show by a preponderance of the evidence that a con spiracy existed between the declarant and the defendant, and that the statement was

made in furtherance of that conspiracy. Bourjaily, 483 U.S. at 175. Hunt asserts that the government did not prove that he was a member of the conspiracy or that Birge's statements were made in furtherance of the conspiracy.

To establish a conspiracy, the government must show the existence of an agreement between two or more persons for the purpose of committing, by their joint efforts, a criminal act. United States v. Hunte, 196 F.3d 687, 691 (7th Cir. 1999). There must be a "participatory link" between the conspiracy and the defendant, which requires the government to show that the defendant knew of the conspiracy and intended to join its criminal purpose. United States v. Pagan, 196 F.3d 884, 889 (7th Cir. 1999); United States v. Navarez, 954 F.2d 1375, 1380-81 (7th Cir. 1992). We review the district court's findings of fact for clear error and findings of law de novo.

We do not believe that the district court clearly erred in finding by a preponderance of the evidence that Hunt knew of the conspiracy, based on his participation with Birge in money laundering and counting, and his close friendship with Birge. Nor do we believe that the district court erred as a matter of law by finding Hunt intended to join the conspiracy on the basis of that same evidence. Hunt argues that because he was not involved in the actual sale of drugs, he was not part of the conspiracy. But the conspiracy's objectives were two-fold--to sell drugs and launder profits. Therefore, Hunt was part of the conspiracy; he participated in and helped to protect the proceeds of the conspiracy when he laundered and counted its money.

For statements to be in furtherance of the conspiracy, they must be "part of the information flow between conspirators intended to help each perform a role," which, for example, may be a statement to "control damage to an ongoing conspiracy or keep conspirators advised about the progress of the conspiracy." United States v. Johnson, 927 F.2d 999, 1002 (7th Cir. 1991). All the statements of which Hunt complains satisfy that standard. Birge, Jr., Bernard, and Rockett were each co-conspirators who testified concerning their conversations with Birge about Hunt's involvement in

the conspiracy, helping to launder money. The conversations involved Birge informing co-conspirators of the existence and progress of the laundering end of the conspiracy or attempting to control damage to the conspiracy.

For instance, Rockett testified that he and Birge discussed how Birge concealed drug trafficking money. Rockett stated, as an example, "Mr. Hunt, he had gotten a '90 something Accura [sic] Legend . . . . [Birge] said it was his, but he couldn't put it in his name because it was such an expensive car," and Birge said this was done "[s]o it wouldn't be traced back to him." Rockett testified that although he could not state absolutely that drug proceeds were used in the purchase, this "is mainly what happened" and Birge had no other source of income, "he didn't have a job." The district court properly found that these and the other statements were made in furtherance of the conspiracy.

3. Hearsay testimony by law enforcement officers.

Addressing the alleged hearsay testimony (Birge's statements regarding Hunt and the Acura Legend purchase) given by law enforcement officers and assuming, arguendo, that the statements were inadmissable, the testimony was harmless. We believe beyond a reasonable doubt that it did not contribute to the verdict. In reaching this conclusion, we consider (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) whether other evidence corroborated or contradicted the witness's material testimony; and (4) the overall strength of the prosecution's case. See United States v. Westmoreland, 240 F.3d 618, 629 (7th Cir. 2001).

Here, the first and third factors all really collapse into the second. The testimony was cumulative. As a consequence, it was not very important to the prosecution's case, and it was corroborated by other evidence. All the testimony was basically the same, that Birge said "Hunt had put the car in his name to hide the asset." This statement is precisely the same as that given by the co-conspirators. More importantly (recognizing co-conspirators' credibility

problems), Hunt's own admission to law enforcement officers that "he obtain[ed] a loan at the bank for the vehicle" he purchased for Birge "so it wouldn't look so suspicious," corroborates the testimony.

Regarding the fourth factor in the analysis, the government had a good case against Hunt. The facts were not in substantial dispute. Hunt's only real contentions lie in the inferences drawn as to his state of mind (i.e., his knowledge of and desire to help the conspiracy). We have already determined, without relying on the hearsay testimony, that those arguments were meritless. We are not convinced that the result of the proceeding was affected by the hearsay testimony or that the result of the trial would have been any different had the testimony been excluded. Based on our analysis, we believe beyond a reasonable doubt that the presumed error did not contribute to the verdict and was harmless.

C.  Sentencing

Hunt raises several challenges to the district court's calculation of his relevant conduct and offense level for sentencing. Most are without merit, and we will not address them here. Rather, we discuss the two arguments Hunt principally advances. We review the district court's application of the sentencing guidelines de novo and defer to the court's findings of fact unless they are clearly erroneous. United States v. Payton, 198 F.3d 980, 982 (7th Cir. 1999).

First, Hunt argues that the district court erred when it decided to hold him accountable for counting money with Birge three times, based on its interpretation of the word "several" (Hunt's own admission of the amount of times) to mean at least three. We disagree. Although several may mean "more than one," it may also mean "more than two." Webster's New Third International Dictionary 2080 (1986). And, implicit in the district court's determination is the conclusion that in light of the evidence, it believed that the (more common) definition of at least three was appropriate. We cannot say the district court's choice to hold Hunt responsible for three was clear error.

Second, Hunt argues that he should have received an offense level reduction as a minor participant in the conspiracy. The district court, and the government on appeal, stated that Hunt was held accountable only for his conduct and therefore was ineligible for such a reduction. See, e.g., United States v. Griffin, 150 F.3d 778, 787 (7th Cir. 1998). If we were to accept the district court's sentencing rationale, then Hunt's argument would be meritless, as both the district court and the government argue. But the district court's sentencing rationale contains an error, that is plain, though Hunt fails to articulate it. Fortunately for Hunt, plain errors in a criminal case may be reviewed despite the parties' failure to raise them. See Fed. R. Crim. Proc. 52(b).

In sentencing Hunt, the district court stated that Hunt was "only being charged with his actual participation in the criminal offense for which he has been convicted" and that "none of the conspiracy activities are being charged to [him] in the sentencing." However, the district court then proceeded to identify the amount of money that Hunt laundered and counted in the drug conspiracy and converted it into its "rough[ ] equivalent" in cocaine, as if Hunt hadactually sold drugs, and applied the drug trafficking guideline, section 2D1.1. This was plain error.

If the district court was accurate in stating that Hunt was being sentenced only for his activity, and not that of the conspiracy (an additional error), then it could not take activity that Hunt did do (launder and count money) and convert it into activity he did not do (sell drugs). Cf. Chapman v. United States, 500 U.S. 453 (1991); United States v. Cones, 195 F.3d 941 (7th Cir. 1999). Hunt laundered and counted money, and accounting only for his activity in calculating a sentence, the district court should have applied the money laundering guidelines, sections 2S1.1 and 2S1.2, not the drug trafficking guideline.
While Hunt was part of a dual-object conspiracy, to sell drugs and launder profits, that does not justify recasting his activity in one part (laundering and counting) to conform with activity he did not commit in the other part (selling).

It is important to keep things straight. See United States v. Goines, 988 F.2d 750, 775-77 (7th Cir. 1993). Hunt laundered and counted money. His co-conspirators sold drugs.

The drug trafficking guideline is applicable to Hunt, however, because he is responsible not only for his own activity, but also for that of his co-conspirators, if reasonably foreseeable and in furtherance of the conspiracy. See U.S.S.G. sec. 1B1.3; see also, e.g., Pinkerton v. United States, 328 U.S. 640, 646 (1946); United States v. Edwards, 945 F.2d 1387, 1391-97 (7th Cir. 1991). Both constitute his relevant conduct for purposes of sentencing. Perhaps recognizing this principle, or maybe just mixing the two together, the district court stated that "I find that the amount of foreseeable--the amount of controlled substance reasonably foreseeable to the defendant and thus constituting his relevant conduct was approximately 4 kilograms of cocaine." We are unsure what the district court meant. For in the statement immediately prior to that one, the district court said again that "here the defendant is only being charged in the sentencing phase with his actual criminal conduct, his actual participation, the money laundering that he was involved in." But that, as we said, was not accurate.

On remand, the district court will need to explore which activity of Hunt's co-conspirators was reasonably foreseeable and in furtherance of the conspiracy. We make a few observations. First, we have not held that the money Hunt laundered and counted could not serve as a basis for determining the conduct of his co-conspirators that was reasonably foreseeable. It stands to reason that because Hunt knew of the drug money, he could have reasonably foreseen the drug sales associated with that money. That conclusion is not preordained, however, and the district court will need to make all the necessary factual findings to support such a conclusion.

Second, the United States did not appeal, and therefore in this circumstance our authority to alter the district court's judgment does not allow for an increase in Hunt's sentence. Aside from this procedural limitation, Hunt's

knowledge of the selling end of the conspiracy was very limited, and likely would not support any further increase. See, e.g., United States v. Magana, 118 F.3d 1173, 1205-06 (7th Cir. 1997); United States v. Smith, 26 F.3d 739, 746-47 (7th Cir. 1994).

Third, the district court's conversion of money-to-drugs has an additional problem. The record does not indicate whether the money Hunt laundered and counted was from one-kilogram sales (possibly to the mid-level dealers Birge supplied) or from smaller consumer-size quantity sales (grams sizes, say, possibly to street customers). This fact is important in this case, because if the district court were to translate dollars of money laundered and counted into quantities of cocaine reasonably foreseeable and distributed in furtherance of the conspiracy, it may end up applying a one-kilogram wholesale price (as it did the first time) when a retail sales revenues total is more appropriate. If the money Hunt laundered and counted was from retail street sales, then the total "price" of one kilogram in the translation should have been higher (reflecting the retail markup on smaller quantity sales). Not adjusting for the difference may make Hunt accountable for a larger quantity of cocaine than was truly reasonably foreseeable.

These matters should be taken under consideration when the district court resentences Hunt.

III.  CONCLUSION

For the foregoing reasons, we Affirm the conviction, Vacate the sentence, and Remand the case for resentencing.

FOOTNOTES

/1 Hunt was convicted of conspiracy for his role as an aider and abetter of the conspiracy. Under federal law, the aiding and abetting statute, 18 U.S.C. sec. 2, does not define an offense; rather, it makes punishable as a principal one who aids or abets the commission of an offense. See, e.g., United States v. Campbell, 425 F.2d 547, 553 (2d Cir. 1970).

/2 The government argues that the district court conditionally rejected Hunt's motions in limine objecting to the evidence at issue, and because

Hunt did not renew his objections at trial, he has forfeited them on appeal. If he has forfeited his objections, the standard of review is plain rather than clear error. See Wilson v. Williams, 182 F.3d 562 (7th Cir. 1999) (en banc). But we need not resolve this question because Hunt cannot prevail under either standard. Accord United States v. Stephenson, 53 F.3d 836, 843 (7th Cir. 1995).