Sonia IRWIN, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 01–3800.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 2002.

Decided Dec. 18, 2002.

Before RIPPLE, MANION, and EVANS, Circuit Judges.

## ORDER

Sonia Irwin appeals the denial of her motion for relief under 28 U.S.C. § 2255. Because we agree with the district court that Irwin has not proven that she suffered ineffective assistance of trial counsel, we affirm.

### I. Background

A jury convicted Sonia Irwin of aiding and abetting a conspiracy to distribute illegal drugs in violation of 21 U.S.C. § 846, and this court affirmed the conviction. *United States v. Irwin*, 149 F.3d 565, 566 (7th Cir.1998). Irwin was for eight years a Chicago police officer, most recently in the gang-crimes unit on the west side of the city. *Id.* at 567. For the last few years she also lived with Gregory Shell, the second-in-command of the Gangster Disciples. *Id.* at 567. The Gangster Disciples are "a large and vicious street gang, [which] sells great quantities of cocaine, heroin, and other drugs in Chicago." *United States v. Hoover*, 246 F.3d 1054, 1056 (7th Cir.2001). Larry Hoover, at the time relevant to this case, acted as the Gangster Disciples' leader despite his imprisonment in Vienna, Illinois. *Id.*

On direct appeal, we affirmed Irwin's conviction because the evidence established that Irwin furthered the drug conspiracy's goals by acting as the nominal owner of a restaurant, June's Shrimp on the Nine, from which Shell and other conspirators made "thousands of gang-related [telephone] calls" controlling drug transactions. *Irwin*, 149 F.3d at 575. We also held that Irwin helped to further the conspiracy by working "in the restaurant to maintain the appearance at least that it was a legitimate business," and that Irwin "at least once asserted some control over the gang's activities in the restaurant" by

ordering that one member of the gang not be allowed to use the telephone because he talked too much. *Id.* This court reasoned that the natural consequence of Irwin's acts was that "the conspiracy would be more likely to succeed" in selling drugs and therefore upheld her conviction. *Id.* at 576.

Irwin then moved for habeas relief under 28 U.S.C. § 2255, which the district court denied. She appeals, arguing that the district court erred by denying her claims of ineffective assistance of counsel.

## II.  Discussion

We review *de novo* the denial of relief under 28 U.S.C. § 2255. *Montgomery v. Greer,* 956 F.2d 677, 680 (7th Cir.1992). We review for clear error a district court's findings of fact in adjudicating such petitions. *Gray–Bey v. United States,* 156 F.3d 733, 737 (7th Cir.1998). The sole basis upon which Irwin argues for habeas relief is that she suffered ineffective assistance of counsel. Whether counsel rendered constitutionally ineffective assistance is a mixed question of law and fact, which we review *de novo. United States v. Shukri,* 207 F.3d 412, 418 (7th Cir.2000). To establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

Irwin contends that her trial attorney was ineffective for failing to investigate and for failing to seek proper jury instructions.

## A.   Failure to Investigate

Irwin argues that her trial counsel was ineffective for failure to investigate evidence that: (1) Irwin was unaware of Shell's role in the Gangster Disciples; (2) Irwin did not take any steps to create a cash flow for Shell; (3) Irwin did not work to make the restaurant a communications center for Shell; or (4) Irwin's status as a police officer did not give the restaurant a veneer of legitimacy. We address these contentions in sequence.

### 1.   Evidence of Irwin's ignorance of Shell's role in the gang.

■  At trial, Irwin's counsel stipulated that, as a gang crimes officer, she was assigned to the gang crimes unit on the west side of Chicago, and that her duties included "investigation and suppression of street gang activity." In its closing argument, the prosecution relied on this stipulation, along with other evidence, to impute to Irwin the knowledge that Shell was a major figure in the Gangster Disciples.

Irwin argues that trial counsel was ineffective for making this stipulation because, had he investigated adequately, he would have learned that: (1) Irwin's duties did not involve keeping track of gang structure and leadership; (2) the Gangster Disciples operated primarily on the south side of Chicago, with only a minor presence on the west side; and (3) Irwin's immediate superior had never heard of Gregory Shell. Irwin also maintains that trial counsel should have discovered and introduced into evidence a Chicago Police Department manual showing that Irwin's duties were limited to suppression of street crimes by gang members, and that Irwin lacked knowledge of gang hierarchy. According to Irwin, this evidence, had trial counsel uncovered and presented it, would have convinced a jury that she was unaware of Shell's criminality and thus lacked knowl-

edge of the illegal activity being aided and abetted.

We reject this argument because, had Irwin adduced evidence that she lacked knowledge, the government would have introduced significant rebuttal evidence. This evidence includes the following:

(1) Irwin's proffer [1] indicating that she had known Shell "for approximately 20 years"; that she was godmother to Shell's son; that she "believe[d] Shell ha[d] some powers within the GD organization"; and that she had once met Shell and seen that he was "surrounded by" people she identified as members of the Gangster Disciples;

(2) a 1994 complaint to the police department's internal affairs division, informing Irwin that "[i]t is alleged that you posted bail for Gregory Shell, *who is a high ranking member of the Gangster Disciples Street Gang.*"

(3) testimony from witnesses from the Chicago Police Department to the effect that gang crimes tactical officers like Irwin were trained to recognize the indicia of gang membership, including colors, symbols, and signs;

(4) testimony from witnesses from the Chicago Police Department to the effect that tactical officers like Irwin who were assigned to a gang crimes unit had unlimited access to intelligence reports about gang members and hierarchy, and were informed of which major gangs operated in all areas of the city; and

(5) testimony from Irwin's former lieutenant to the effect that Irwin could

have gone into any police station to examine the rap sheets and any synoptic reports on gang members and hierarchy, some of which listed Shell as a leader in the Gangster Disciples.

Given the substantive amount of evidence the government could have introduced had trial counsel contested Irwin's knowledge of Shell's high level of involvement with the Gangster Disciples, Irwin's attorney could have reasonably concluded that the stipulation was in her best interest. We "presume that counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption." *Traeger,* 289 F.3d at 472. Irwin not only fails to present any evidence rebutting this presumption, in view of the countervailing evidence delineated above, any argument that Irwin did not know that Gregory Shell was a high-ranking member of the Gangster Disciples would have been dubious at best.

*2.   Evidence that Irwin did not take any steps to create a cash flow for Shell.*

■   Irwin next contends that trial counsel was ineffective for failing to investigate evidence that her restaurant made little money. She argues that this evidence would have refuted the government's theory that Irwin intended her restaurant to "create the illusion that Shell was a legitimate business owner and would explain whatever cash he was spending." The district court rejected this argument, finding that the prosecution never contended to the jury that Irwin used the restaurant to allow Shell to masquerade as an honest

---

1.  When a defendant introduces evidence contradicting an admission made in a proffer, that evidence can trigger the introduction of the proffer in rebuttal. *See United States v.*

*Traeger,* 289 F.3d 461, 472 (7th Cir.2002). Neither party disputes that, in this case, the proffer would have been admissible evidence.

businessman. Instead, the district court found, the prosecution had limited itself to the argument that Shell and his henchmen had used the restaurant as "a good meeting place."

Irwin disputes the district court's finding that the government did not attempt to prove Shell used the restaurant to pose as a legitimate businessman. She points to two references in the trial record. First, she locates a single sentence in the government's opening statement to the effect that Shell "needs something that will look like it's generating money, even though the money is really from the drug sales, although some of the money is from the restaurant itself." Second, she cites to one page of the trial transcript for the proposition that the "government called an expert witness to discourse on the importance for a drug dealer of having a legitimate cash flow."

For two reasons, we agree with the district court that the government did not argue that Irwin aided and abetted Shell by allowing him to pose as a legitimate businessman. First, in the context of an extensive trial record, the two isolated and insubstantial items that Irwin calls to our attention do not convince us that the government actually argued that Irwin aided Shell by allowing him to pretend the restaurant was the source of his income. Second, it would have made no sense for the government to contend that Irwin bought the restaurant to "create the illusion that *Shell* was a legitimate business owner" when the restaurant was in Irwin's name, and the restaurant's sales tax returns were not under Shell's name, but under the name of "Howard's Fishery." In short, counsel's failure to rebut an argument the government did not make cannot be the basis of holding him professionally deficient or concluding that Irwin suffered

prejudice. Therefore we reject this basis for counsel's ineffectiveness.

### 3. Evidence that Irwin did not work to make the restaurant a communications center for Shell.

■ Irwin also argues that trial counsel was ineffective for failing to introduce evidence of two taped telephone calls that she made from the restaurant to the telephone company, calls in which she sought to place a block on incoming collect calls from imprisoned Gangster Disciples. Irwin's theory is that a block would have prevented Shell from contacting his imprisoned boss, Larry Hoover, and that proving this contention to the jury would have undermined the prosecution's theory that she aided and abetted the conspiracy by allowing the gang to use her restaurant as a communications center.

The court rejects this argument because Irwin cannot prove the element of prejudice. The government monitored thousands of calls between gang members at the restaurant, and many gang members, including some top leaders, frequented the restaurant. Irwin was aware of this activity. *Irwin*, 149 F.3d at 575. Thus, evidence that Irwin took steps to block calls from prisoners hardly undercuts the theory that the restaurant was a communications center, and it definitely does not call into question the integrity of the jury's verdict against her. In fact, had such evidence been introduced, the government could plausibly have argued that blocking collect calls from prisoners was an attempt to eradicate evidence of an obvious connection of imprisoned gang leaders with the restaurant. Counsel was not ineffective for not risking introduction of evidence that would at best send mixed messages to the jury.

*4. Evidence contradicting the argument that Irwin's status as a police officer gave the restaurant a veneer of legitimacy.*

■ Finally, Irwin argues that, had trial counsel conducted an adequate investigation, the defense could have undermined the prosecution's unsupported statement that her status as a police officer aided the conspiracy by providing de facto immunity for criminal activity at the restaurant. We agree with Irwin that trial counsel could have presented evidence that, in fact, internal affairs had shown no reluctance in investigating her or the restaurant. When she appeared at the police station with what appeared to be money for her "boyfriend" Gregory Shell, an investigation followed. Perhaps evidence of the investigation would have shown that being a police officer did not invite favorable treatment. But it would also have exposed affidavits and Irwin's deposition that could have raised additional suspicion of her using her position as a police officer to gain access to, and to assist, Shell after he had been arrested for gang activities. No matter which direction the shadow could be cast, the mere fact that Irwin was a police officer assigned to a gang crimes unit detracts from her claim that she did not know that the man she knew most of her life and lived with for two years, and at whose behest she had purchased a restaurant frequented by gang members, was not a high-ranking member of the gang. The less said about any police investigation of her suspicious intervention may arguably have been the better. At least it was not an ineffective counsel who passed up the opportunity to present evidence that internal affairs were not reluctant to investigate Irwin's activities.

■ We also agree with the district court that such an effort, in light of the inculpatory evidence regarding the use of the restaurant as an information center, "would not have made a particle of difference in all this." That is to say, the evidence that Irwin permitted known drug traffickers to use her restaurant as a communications center was so strong that, even if defense counsel had pursued this line of argument, it would not have changed the outcome of this case, and Irwin thus suffered no prejudice.

## B. Failure to Seek Jury Instructions

■ Irwin's final contention is that trial counsel was ineffective for failing to propose a jury instruction to the effect that "the only act they might consider [as to aiding and abetting] would be the restaurant purchase and that the other acts could be considered only on the separate element of knowledge." The elements of aiding and abetting are: (1) knowledge of the illegal activity being aided and abetted; (2) the desire to help the activity succeed; and (3) an act of helping. *United States v. Hunt*, 272 F.3d 488, 493 (7th Cir.2001). At trial, the prosecution presented three theories of aiding and abetting: (1) that Irwin allowed Shell to use her credit card account; (2) that Irwin rented cars with which Shell drove to conspire with Hoover; and (3) that Irwin allowed Shell to use the restaurant as a communications center. *Id.* at 575. On direct appeal, we held that the first two alleged methods of furthering the conspiracy "simply cannot, by [themselves], support the inference of intent." *Id.* Because we held that Irwin's involvement with the restaurant was sufficient to support the inference of intent, we did not reach the issue of whether the use of Irwin's credit card and car rentals could, combined with other evidence, support the inference of intent. *Id.* On habeas review, however, the district court held that aiding and abetting could not be shown by the credit card and rental car use, even when

added to the other evidence. Unfortunately for Irwin, it also held that defense counsel's failure to seek a limiting jury instruction had no "substantial impact on the trial."

As stated above, Irwin contends that trial counsel was ineffective *for failing to* propose a jury instruction to the effect that "the only act they might consider [as to aiding and abetting] would be the restaurant purchase and that the other acts could be considered only on the separate element of knowledge." The crux of her position is that trial counsel was ineffective for "not realizing that under [*Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)] he had a clear right to seek an instruction that would have removed certain acts from the jury's consideration as acts of aiding and abetting." Irwin then argues that her attorney should have requested an instruction that would have informed the jury that the prosecution's reliance on evidence that she allowed Shell to use her credit card and rented the cars that Shell used could not support a conviction for aiding and abetting.

The problem with Irwin's argument is that she cannot establish prejudice. Under *Griffin,* the jury is presumed to have convicted the defendant based only on the theory for which the prosecution presented sufficient evidence, and not to have been influenced by theories for which the evidence was inadequate. *Id.* at 59–60, 112 S.Ct. 466 (citing *United States v. Townsend,* 924 F.2d 1385, 1414 (7th Cir.1991)). Irwin presents no evidence that would counteract this presumption. Thus, although Irwin's counsel may arguably have been deficient for failing to seek a *Griffin* instruction, Irwin has not demonstrated that such an instruction likely would have changed the trial's outcome.

### III.   Conclusion

Because Irwin cannot establish that defense counsel's alleged errors rendered the verdict suspect, she cannot prove the element of prejudice required to sustain a claim of ineffective assistance of counsel. We therefore affirm the district court.